# Hughesville Borough School District *v.* Wolf Township School District, Appellant.

*School law—High schools—Grade of school—Payment for tuition in high school—Acts of May 8, 1854, sec. 23, P. L. 617, May 26, 1893, P. L. 146, June 28, 1895, P. L. 413, and March 16, 1905, P. L. 40.—Constitutional law—Bill of rights—Local act—Title of statute.*

1. Apart from the Acts of May 26, 1893, P. L. 146, and June 28, 1895, P. L. 413, a school district has the right to establish a high school under

the powers conferred upon it by the General School Law of May 8, 1854, P. L. 617, which provides that "the directors and controllers of the respective districts shall have power to establish schools of different grades, and to determine into which school each pupil shall be admitted." High schools created under this act are high schools within the meaning of the Act of March 16, 1905, P. L. 40, which provides that "children residing in school districts in which no public high school is maintained may attend a high school in some other district located near their homes," with the consent of the directors of such district and payment of cost of tuition.

2. The Act of March 16, 1905, P. L. 40, relating to the tuition of children in high schools outside of districts in which the children reside, is constitutional. It does not offend against the bill of rights as interfering with property or the right to contract; nor does it violate sec. 1, of art. X, of the constitution, relating to the maintenance and support of a system of public schools; nor is it contrary to sec. 7, art. III, of the constitution as a local or special act; nor does it infringe upon art. III, sec. 3, of the constitution as being defective in title in not indicating by whom the tuition of nonresident pupils in high schools is to be paid.

Argued Feb. 24, 1909. Appeal, No. 9, Feb. T., 1909, by defendant, from judgment of C. P. Lycoming Co., March T., 1907, No. 403, for plaintiff on case tried by the court without a jury in suit of The School District of Hughesville Borough v. Wolf Township School District. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit to determine liability of a school district for the tuition of pupils of such district in the high school district of a neighboring district.

The case was tried by HART, P. J., without a jury under the Act of April 22, 1874, P. L. 108.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in entering judgment for plaintiff for $138.75.

*W. E. Crawford,* for appellant.

*W. C. Gilmore,* with him *Ermin F. Hill,* for appellee.

OPINION BY BEAVER, J., July 14, 1909:

Under the ninth paragraph of the twenty-third section of the Act of May 8, 1854, P. L. 617, it is provided that, "The directors and controllers of the respective districts shall have power to establish schools of different grades, and to determine into which school each pupil shall be admitted." In accordance with this general power, under what is known as our common school law, the school directors of the borough of Hughesville undertook at different times to establish different grades in their schools and, as the evidence of their establishment, placed the record of their action upon the minutes of the board. The plaintiff offered the minutes of the school board in evidence, in order to show that a high school as such had been established in the borough. Exception to the introduction of such evidence was taken and the evidence was admitted.

In 1893, P. L. 146, specific authority was given, in addition to the powers and duties conferred or enjoined by the act of May 8, 1854, to boards of controllers or directors in school districts which are composed of cities or boroughs divided into wards for school purposes, or boroughs not divided into wards for school purposes, having a population of 5,000 or over, to "establish a public high school."

June 28, 1895, P. L. 413, what is known as the township high school act was passed, under and by virtue of which "The directors or controllers of any school district may establish a public high school," providing for the grading of the same, "and the state superintendent of public instruction shall prescribe a uniform course of instruction which shall be taught in the high schools of each grade." This act also provides in its fourth section—and this seems to be one of its most distinguishing features—for the manner in which appropriations in aid of high schools of the different grades shall be apportioned.

These and later acts enlarged the powers of the boards of school directors and controllers named therein, and also limited them in certain respects, so as to control more completely the high schools of the state and to place them, so far as the course of instruction was concerned, and in their general oversight, under the control of the department of public instruction. It

has never been held, however, so far as we know, that the so-called high schools, erected by the several boards of school directors and controllers, under the provisions of the act of 1854, were improperly or improvidently established and conducted, because they had no power to establish schools of the grade of high schools. On the contrary, it was the general custom throughout the commonwealth to establish schools of that grade, under the name of high schools, and many are still so maintained, most of them perhaps not being within the provisions of the act of 1893 and not having brought themselves within the provisions of the act of 1895, and yet schools previously established and maintained for many years are carrying forward their work as high schools, as efficiently perhaps, and with equal authority, under the act of 1854. No limit in the ninth paragraph of the twenty-third section of the act of 1854 is prescribed, and the power to establish a high school would be apparently as well conferred as that to establish a primary school or the several grades of what is called a grammer school. The reception of the testimony contained in the minutes of the plaintiff school board, as complained of in the first, second and third assignments of error, was, therefore, proper for the purpose for which it was introduced. It follows that the plaintiff's ninth point, "That the evidence in this case establishes the fact that the school district of the borough of Hughesville was maintaining a public high school within the borough of Hughesville during the school year of 1905–1906," was properly affirmed, as was also the plaintiff's first request for a finding of law upon the same subject.

The plaintiff seeks to recover in this case under the provisions of the Act of March 16, 1905, P. L. 40, which provides: "That children residing in school districts in which no public high school is maintained, may attend a high school in some other district, located near their homes; provided the consent of the directors of the district in which said high school is located be first obtained; the cost of tuition and school books, which shall not exceed that of the tuition and school books of children in the same course or courses in the district maintaining such high school, shall be paid to the district receiving such

children, out of the moneys raised by taxation for public school purposes in the district in which said children reside: Provided, That, before admission to a high school, such pupils shall be examined and found qualified for high school work, by the principal of such high school."

Certain children residing in the defendant district, after examination by the principal of the high school, were received, at the request of their parents, into the high school of the school district of the plaintiff borough and were taught there during the school year of 1905–1906.

The seventh, eighth and ninth assignments of error are based upon the alleged unconstitutionality of this act of assembly. The portions of the constitution against which this act is alleged to offend are the first section of the first article, in which it is asserted: "We declare that all men are born equally free and independent and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." The respect in which this provision of the constitution is alleged to be infringed is, "in that the said act of assembly interferes with the right of possessing and protecting property and the consequent right of making contracts in relation thereto, and is, therefore, unconstitutional and void." The argument seems to be that "the money raised by taxation for school purposes is the property of the school district, that the possession and disposition of the school funds belong to the board of directors," and that, therefore, no obligation rests upon them for the payment of any money, unless it arises under a special contract made by the board itself. This is a somewhat novel appeal to what is known as our "Bill of Rights." That declaration deals specifically with the inherent and indefeasible rights with which men are born and are those which relate to natural persons and not to the artificial persons which are the creatures of law. A school board is exclusively the creature of law. It has such rights, and such only, as are conferred upon it by its creator. True it is for some purposes a legal entity but becomes such solely by the operation of law, and so cannot assume, as such

entity, the rights, privileges and immunities which belong to the individuals composing the legal entity as natural persons. "In Pennsylvania, a school district is but an agent of the commonwealth, and as such a quasi corporation for the sole purpose of administering the commonwealth's system of public education:" Ford v. Kendall Boro. Sch. Dist., 121 Pa. 543. It is, therefore, impossible to try the constitutionality of a law which restricts the power and authority of such a creature by a constitutional provision which has no relation to it but relates entirely to the rights, liberties, privileges and immunities of natural persons. A school board is a quasi corporation, recognized as such because it is essential for the purposes of its creation that it should have the power to levy taxes, build schoolhouses, employ teachers, establish grades in schools under its control and do the many things necessary to carry forward our system of public education, and authorized by the law which creates it. But none of these are natural rights. They are conferred by the power which creates the school board and constitutes it an artificial person for the purpose of providing for the welfare of the community at large by the establishment and maintenance of a system of education for the young. None of the authorities referred to by the appellant sustain in any respect its contention. All relate to the rights of natural persons.

We are unable to see why the legislature, in carrying out the provisions of sec. 1 of art. X, which directs that, "The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public schools, wherein all the children of this commonwealth above the age of six years may be educated," should not have the power, by appropriate legislation, to authorize the attendance of the children of one school district where no high school existed upon a high school of an adjoining district. It seems to us that the maintenance of any system, much more a "thorough and efficient system," involves such power as this implies.

The second ground of attack upon the constitutionality of the act of March 16, 1905, is that it is contrary to sec. 7, art. III, being local or special. Wherein is the act of March 16, 1905,

local or special in reference to school districts? It relates to all children residing in school districts in which no public high school is maintained, and confers the right to attend a high school in some other district located near their homes. We take it that the act confers upon all children of townships where no high schools are located the right to attend a high school of any township near their homes. That is, if a township without a high school were surrounded by two or more townships in which there were high schools, the children qualified for entrance to the high school which they propose to attend would be entitled to enter the school in that township which was the nearest, time and distance being considered, to their home. In this we can see no effort or intent on the part of the legislature to confer a special privilege upon any of the inhabitants of any school district or to discriminate against any. Some may be compelled to travel farther than others to reach a high school, but that is not a discrimination created by the law, the object, as we understand it, being to give to all the children of the commonwealth, deprived of the privilege of attending a high school in their own township, the right to attend the high school nearest to their home, and this is not, as we view it, repugnant to the seventh section of the third article of the constitution.

No one article of the constitution perhaps has received more careful and varied attention in its interpretation than the third, particularly as relates to its seventh section. In general, "When the legislative intent is not to evade the restrictions of the constitution, the courts are not required to be astute in extending them over cases not really within the evil prohibited, though the form may have the appearance of coming within the literal words of the constitution. In statutes local in form but not in intent violative of the constitution, the courts will look beyond the mere form of the act, and examine its true intent and effect in the light of the purpose of the constitutional restrictions:" Bennett v. Norton, 171 Pa. 221. This act, as we view it, is simply a recognition of the principle of classification which has been so largely introduced into our legislation by reason of the necessities which have arisen by virtue of the restrictive provisions of this third article of the constitution, and it has been

held in Com. v. Gilligan, 195 Pa. 504, that, "There is no constitutional objection to the classification of school districts any more than of cities. Both are included in the same clause of the constitution prohibitory of local or special legislation, and there is no argument against classification of one that is not equally forcible against the other.

"Classification is the grouping together for the purposes of legislation of communities or public bodies which, by reason of similarity of situation, circumstances, requirements and convenience, will have their public interests best subserved by similar regulations.

"With reference to public matters and legislative usage, necessity means great or urgent public convenience. The necessity for classification is the necessity of escape from the intolerable inconvenience of uniformity of regulations under circumstances and needs essentially different springing from manifest peculiarities clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class separately that would be useless and detrimental to the others." Classification applies to' school districts without high schools and such as have high schools as fully as though classified by numbers.

All this applies with special force to the necessity imposed by the constitution itself upon the legislature to provide a thorough and efficient system of education which, as we take it, involves the education of all the children of the commonwealth upon terms and conditions practically the same, or as nearly similar as circumstances will admit. The act applies, it is true, to townships of different classes, the one in which there are high schools, the other in which there are no high schools, but the tendency after all is toward uniformity and not diversity, that is, uniformity in the privileges to be conferred upon the inhabitants of the commonwealth, the necessity for the provision for which arises from the diversity in the conditions which surround them in the differences in the several school districts in which they reside.

The third ground upon which the constitutionality of the act is attacked is that its title is defective. The title is as follows:

"An act permitting children, residing in school districts in
which no public high school is maintained, to attend a high
school in some other district, located near their homes, and pro-
viding for the payment of cost of tuition and schoolbooks."
The title of this act gives clear and unequivocal notice that
legislation affecting school districts in which there are no high
schools and school districts in which there are high schools is
provided, and that the children from school districts in which
there are no high schools may attend the high schools of the
districts in which they are provided, and that the tuition and
books are to be paid for. Paid for by whom? That is to be
ascertained, of course, by an inspection of the law, but the title
is distinct notice to the parties principally interested, namely,
the school districts in which there are no high schools and those
in which there are high schools, to induce an inspection of the
law to ascertain by whom and to whom payment for the educa-
tion of these children is to be made. Seldom do we find a title
to an act of assembly which more clearly indicates its scope and
contents than the one under consideration. It is not necessary
to cite authorities, which have become so numerous that they
are already burdensome, upon this subject.

The borough of Hughesville, having been clearly shown to
have maintained a high school within its school district and the
children of inhabitants of the school district of Wolf township
adjoining said borough having been properly examined and
received into the said high school and having been furnished
with books and received instruction in accordance with the
provisions of the Act of March 16, 1905, P. L. 40, we are of opin-
ion that the school district of the borough of Hughesville had
the right to recover from the school district of Wolf township
the cost of tuition and schoolbooks, which did not exceed—and
as to this there is no contention—that of the tuition and school-
books of children in the same grades or courses in the said school
district of the borough of Hughesville.

Although the assignments of error are not pursued seriatim
and in detail, we think we have disposed of the questions in-
volved in this case, as argued and pressed upon us by the ap-
pellant. We find nothing in the trial of the case, which was

conducted before the court by agreement, without a jury, which is in any way erroneous, and the conclusion is one which seems to us to be not only entirely justified by the law but in every way equitable and wholesome.'

Judgment affirmed.