Haverford Township et al., Appellants, *v.*
Siegle et al.

Argued September 30, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Robert T. McCracken,* with him *Arthur L. Reeser* and *William R. Toal,* for appellants.

*Gilbert W. Oswald,* with him *Robert W. Beatty* and *Wm. A. Schnader,* for appellees.

OPINION BY MR. JUSTICE DREW, November 23, 1942:

The Township of Haverford, a first class township, and the Board of Township Commissioners, filed a petition for a declaratory judgment, respecting the constitutionality of the Act of June 5, 1941, P. L. 84. From a final order upholding the constitutionality of the statute and dismissing exceptions, this appeal was taken.

The Act in question provided for the appointment of a police civil service commission to adopt rules and regulations for the appointment, promotion and reduction in rank, suspension and removal of paid members of the police force in boroughs, towns, and first class townships, and by its terms is only applicable to such municipalities as have three or more paid police officers.

The petitioners urged that the Act was special or class legislation in violation of Article III, Sections 7 and 34 of the Constitution[1], as regulating the affairs of first

---

[1] The constitutional provisions referred to are as follows:

Article III, section 7: "The General Assembly shall not pass any local or special law:

class townships and boroughs upon a classification based upon the number of policemen rather than by population; that legislation regulating the affairs of municipalities must be upon a classification based upon population, and that the Act granted certain individuals special or exclusive privileges or immunities in violation of the Constitution.

The statute applies to all boroughs, incorporated towns, and townships of the first class. It is obvious that it would be absurd to set up a comprehensive civil service administration for the appointment, promotion and removal of police officers in any political subdivision having one or two, or perhaps no police officers. For this sole reason the legislature provided that the Act shall not apply to such municipalities. The enactment is in purpose and effect a general law. There is no contention that it was designed to apply to any particular locality or localities, and it is clear that this was not its purpose. It applies, or may apply, to every borough, town and first class township in the Commonwealth. If a given first class township has no police organization, or no organization justifying the system, the application of the Act is of necessity suspended. When such township acquires a sufficient organization to justify the system, the Act automatically becomes effective.

This is not classification within the meaning of the cases discussing the permissible scope of classification of

(Clause 2)—Regulating the affairs of counties, cities, townships, wards, boroughs or school districts:

(Clause 15)—Creating offices, or prescribing the powers and duties of officers in counties, cities, boroughs, townships, election or school districts:

(Clause 26)—Granting to any corporation, association or individual any special or exclusive privilege or immunity . . ."

Article III, section 34: "The Legislature shall have power to classify counties, cities, boroughs, school districts, and townships according to population, and all laws passed relating to each class, and all laws passed relating to, and regulating procedure and proceedings in court with reference to any class, shall be deemed general legislation within the meaning of the Constitution; . . ."

governmental subdivisions in this Commonwealth. It is rather legislation affecting several well-established classes of municipalities, and applying to all members within those recognized classes if or when they have or acquire three or more police officers. The principle that the legislature may validly regulate where the need is most acute and except or exempt individual situations in which the need is not great, is well settled: *Commonwealth v. Hospital*, 198 Pa. 270; *School District v. School District*, 40 Pa. Superior Ct. 311.

In *Durkin v. Kingston Coal Co.*, 171 Pa. 193, the Act of June 2, 1891, P.L. 176, was considered. This statute regulated anthracite coal mines but applied only to mines employing more than ten persons. This Court held the Act invalid as a violation of the Bill of Rights of the Constitution. However, the exemption of mines employing less than ten persons was considered and was expressly approved. In this regard, the Court said, at page 204:

". . . . It relates to all anthracite coal mines and defines what shall be regarded as such mines. Coal may be taken out of the ground by farm owners for their own use, or it may be taken in *such small quantities and for such local purposes as to make the application of the mining laws to the operations so conducted not only unnecessary but burdensome to the extent of absolute prohibition.* Such limited or incipient operations are not within the mischief to remedy which the mining laws were devised . . . The business of coal mining like that of insurance or banking may be defined by the legislature. The definition found in the act of 1891 seems to us reasonable, to be within the fair limits of a legislative definition, and *to exclude only such operations as are too small to make the general regulations provided by the act applicable to them . . .*" (Italics added).

This reasoning applies with striking force to the present Act, which excludes only municipalities in which the police forces "are too small to make the general regulations provided by the Act applicable to them."

In *Commonwealth v. McDermott*, 296 Pa. 299, this Court held valid the Act of May 13, 1925, P.L. 644, which required registration with the department of public welfare for the soliciting of funds for charitable purposes, and exempted certain groups such as fraternal organizations, religious organizations, colleges, labor unions, municipalities or subdivisions thereof. It was contended that the exemptions rendered this act local and special in violation of the Constitution. Mr. Justice FRAZER, speaking for the Court, said (p. 304) : ". . . The right of the legislature to enact laws containing exemptions has been so long established in this and other jurisdictions that we do not deem it necessary to refer to authorities here, only repeating what this court has often said, that there must be sound reason and real necessity for the exemptions."

In *Commonwealth v. Shafer*, 32 Pa. Superior Ct. 497, the court upheld the Act of June 24, 1895, P.L. 232, which authorized cities and boroughs to regulate the construction of house drainage and to provide for the registration of plumbers, and which expressly excepted from its provisions boroughs having no system of water supply or system of sewerage. This case is particularly pertinent here since it applies to boroughs and contains a specific exemption.

These cases make it clear that the legislature has the right, in regulating a particular class to exclude certain members of the class to whom the Act can have no useful application. A township having one or two or no police officers would be justified in objecting strenuously to the expense and inconvenience of maintaining a complete system of police civil service which would have no function to perform. This exception in the legislation does not constitute a classification of boroughs, towns and first class townships. The Act is general in both purpose and scope. The exception is reasonable and necessary, and is based on considerations as plain as they are sound.

The instant case stands or falls on the assertion that municipalities may not be "classified" except according to their population. Article III, section 7, supplies the answer. That Section was adopted for a very simple and understandable purpose—to put an end to the flood of privileged legislation for particular localities and for private purposes which was common in 1873. The Section said what it meant. It was aimed at laws that were in the proper sense local and special. See *Commonwealth v. Gilligan,* 195 Pa. 504. In 1875 the Section first came before this Court, in *Wheeler v. Philadelphia,* 77 Pa. 338. The legislature in 1874 had passed the first comprehensive classification law for cities, dividing them into three classes according to their population, and legislating separately for each class. Under the classification, Philadelphia was the only city of the first class, and the law was accordingly attacked as local and special. The opinion of the Court was written by Mr. Justice PAXSON. He held that the constitutional provision was not intended to prevent the legislature from meeting diverse needs; that classification was not excluded; and that the fact that Philadelphia was the only member of a class did not make the act local, since it provided for a class as such, into which other members might come. The learned judge gave specific illustration of the necessity for classified legislation by pointing out the large amount of legislation which had been passed for Philadelphia because of its status as a great port and continued (p. 350) : ". . . We have but to glance at this legislation to see that the most of it is wholly unsuited to small inland cities, and that to inflict it upon them would be little short of a calamity. Must the city of Scranton, over 100 miles from tide water, with a stream hardly large enough to float a batteau, be subjected to quarantine regulations, and have its lazaretto?"

The significance of this observation is apparent. The Court, and in particular Mr. Justice PAXSON, recognized

at the very outset in the interpretation of Section 7 that there are differences between cities calling for differences in legislative treatment which have no relation to population at all. It was on the basis of such a difference, employed as a specific illustration, that the Court sustained the principle of classification of municipalities.

Section 7 was next before the Court in *Commonwealth v. Patton,* 88 Pa. 258 (1879). This opinion was also written by Mr. Justice PAXSON. He held that the act designating Titusville as a place for the county court to sit was clearly special, since it applied only to Titusville and could never apply to any other city, and the correctness of this result is of course obvious. The Court said there (p. 260) :

". . . This is classification run mad. Why not say all counties named Crawford, with a population exceeding sixty thousand, that contain a city called Titusville, with a population of over eight thousand, and situated twenty-seven miles from the county seat? Or all counties with a population of over sixty thousand watered by a certain river or bounded by a certain mountain? *There can be no proper classification of cities or counties except by population.* The moment we resort to geographical distinctions we enter the domain of special legislation, for the reason that such classification operates upon certain cities or counties to the perpetual exclusion of all others . . ." (Italics added.)

Such is the origin of the dictum. It is a purely parenthetical insertion in a condemnation of geographical classification. It is made without emphasis, without authority, and, it seems clear, without careful thought concerning its implications. Certainly, the same learned judge who within four years had made so clear the need of differentiation between cities with respect to matters unrelated to population, would not as casually as this retract his elaborated views. It cannot be supposed that Mr. Justice PAXSON meant to say that if Philadelphia and Scranton had the same population, every bit of port

legislation appropriate to Philadelphia would, without exception, have to be applied to Scranton.

If the statement is given appropriate meaning, it must be restricted to the kind of classification that had before that time come before the Court—comprehensive and specific classification such as the general grouping of cities made in the Act of 1874. It is hard to imagine any basis except population for a broad classification of municipalities for general legislative purposes. But this is very different from a statement that for all purposes, whatever the reason, no distinction may be made in applying legislation to municipalities unless it is done according to the number of people who live in them.

The latter doctrine is not the law. Its impossibility is proven by the illustration employed by Mr. Justice PAXSON in *Wheeler v. Philadelphia*, supra. Such a rule would mean that in legislating for municipalities the General Assembly would lose all that freedom of reasonable exception which this Court has frequently recognized as to all other subjects of legislation. That it is not the law is shown by two decisions: *Bennett v. Norton*, 171 Pa. 221 (1895) and *Commonwealth v. Shafer*, supra. The doctrine has been casually mentioned in three later opinions of the Court, *Com. ex rel. Brown v. Gumbert*, 256 Pa. 531, *Commonwealth ex rel. v. Wert*, 282 Pa. 575, and *Merion T. v. Bridgeport B.*, 299 Pa. 297. But in none of these cases was it employed as the basis of the decision, nor has the decision anything to do with this case.

Petitioners say that the Act violates section 34 of Article III, in that it "definitely determines" the extent to which municipalities may be classified, and prohibits classification except by population. There is no merit in the contention. The plain language of this constitutional amendment makes it clear that the legislature *may* classify municipalities according to population, and that laws for classes so provided shall be considered general for all purposes. The language is "The Legislature shall have power to classify . . . according to popula-

tion." There is no requirement that the legislature employ this method of classification, and no prohibition of any other method. The reason and need for the amendment are made clear in *Commonwealth ex rel. v. Wert,* supra. Its purpose and effect were not to contract, but to broaden, the latitude allowed in classification, and to eliminate the continuing controversy about such matters as the subjects on which classification by population was appropriate and the creation of classes containing only one member. See *Tranter v. Allegheny Co. Authority,* 316 Pa. 65; *Suermann v. Hadley,* 327 Pa. 190; *Dornan v. Phila. Housing Authority,* 331 Pa. 209. It cannot be supposed that a constitutional amendment adopted to broaden the latitude of the legislature in classification, was intended at the same time to prohibit necessary and reasonable exceptions of the subject matter in acts wholly general in scope.

Finally, it is argued that the Act violates the twenty-sixth clause of section 7, Article III, prohibiting local or special laws granting to any corporation or individual any special privilege or immunity. It is said that the statute grants privileges to members of the police force in first class townships having a police force of more than three members, and denies them to policemen in other such townships. The obvious answer is that such differences always happen whenever legislation regulating municipal affairs is made effective in certain municipalities and not in others. If such an argument were sound, civil service could never have been inaugurated unless it were done in every city, town, borough and township in the Commonwealth at the same time. The patent unreasonableness of such a suggestion destroys it.

All of which leads to the conclusion that the Police Civil Service Act of 1941, P. L. 84, is constitutional, and we so declare it.

Order affirmed.