## Local Health Programs

HARRY J. RUBIN, Deputy Attorney General, THOMAS D. MCBRIDE, Attorney General, September 18, 1957.— House Bill no. 1700, printer's no. 1002, of the 1957 session of the General Assembly, signed by the Governor on July 19, 1957, as Act No. 95A, contains the following provision among those appropriating sums to the Department of Health:

"Providing aid to counties in the establishment and maintenance of county health departments in accordance with the act of August 24, 1951 (P L 1304). Only those counties participating under the act of August 24, 1951 (P L 1304) as of the effective date of this act shall be eligible for assistance . . . . . . . . 3,000.000"

You have requested our advice on the interpretation and effect of the second sentence in the above provision, noting that such sentence would appear to preclude State aid to counties which had not established a county health department as of July 19, 1957, the effective date of the act.

The Local Health Administration Law of August 24, 1951, P. L. 1304, 16 PS §§12001 to 12028, governs the establishment and operation of county health de-

partments in all but first class counties. Section 25 of the act provides for State grants to county departments of health and to eligible municipalities. While that section conditions full payment of grants on the appropriation of sufficient funds,[1] neither it nor any other section imposes a limitation on the time within which counties must create their health departments in order to be eligible for the grants. Such limitation appears only in the provisions of Act No. 95A quoted above. Nor is there any requirement that to be eligible for assistance during a biennium a county must create its health department prior to the time the appropriation is made for the biennium by the legislature. Section 25 of the act contemplates eligibility to receive grants whenever the health department is created for it provides for an "initial grant" to cover operation of the department "from the date of its establishment to the end of the calendar year in which it is established"[2] and for "annual grants" during calendar years thereafter.[3]

Several problems concerning the constitutionality of the questioned clause in Act No. 95A arise. First, is the provision in violation of article III, sec. 6, of the Pennsylvania Constitution which forbids amendment of a law by reference to its title only? Second, does the provision transgress the requirement of article III, sec. 15, that the general appropriation bill embrace only certain subjects of appropriation specified therein (a so-called "rider" being forbidden)? Third, is the clause, in effect, a local or special law regulating the

---

1. If sufficient funds are not appropriated to permit maximum grants to be made, the Secretary of Health is to distribute the available funds on an equitable basis

2. Local Health Administration Law of August 24, 1951, P. L. 1304, sec. 25(a), 16 PS §12025(a).

3. Local Health Administration Law of August 24, 1951, P. L. 1304, sec. 25(b), 16 PS §12025(b).

affairs of counties in violation of article III, sec. 7? Under the view we take of the problem, we need not consider the applicability of sections 6 and 15 of article III, i.e., first and second questions above. Therefore, we expressly refrain from passing upon those issues, and nothing said herein should be taken as an expression of our views on these questions.

The restriction included in article III, sec. 7, that the legislature shall not pass any local or special law regulating the affairs of counties, involves a problem of classification. This restriction does not prevent the classification of counties according to population in order that special consideration may be given to the varying problems of smaller and larger counties, and the enactment of legislation applying to a class or classes of counties based on population is valid.[4] It does, however, prevent the legislature from arbitrarily singling out one or more counties for special treatment. Thus, the Local Health Administration Law, supra, does not apply to counties of the first class, and the legislature could have limited its application to counties of the fourth, fifth and sixth classes were there reasonable grounds for so doing. The legislature could not, however, specifically restrict its application to named counties within a class or accomplish the same result in an indirect manner. And while it can condition applicability upon a county's meeting certain requirements if the requirements applied similarly to all counties in the same class, it cannot arbitrarily impose conditions as to eligibility and, thereby, indirectly achieve the passage of a special or local law regulating the affairs of counties.

In the present situation we believe that the legislature has enacted a discriminatory condition which falls within the proscription against a local or special

4. See Lloyd v. Smith, 176 Pa. 213, 218, 35 Atl. 199 (1896), and cases cited therein.

law. Our views concerning the impropriety and the unreasonableness of the classification are supported both by case law and the nature of the discrimination. The Pennsylvania Supreme Court has stated that there can be no proper classification of counties except by population.[5] Although this statement subsequently has been criticized as too restrictive,[6] it seems that a classification based on population as well as on any other basis is subject to the test of reasonableness,[7] that is, it must be rationally designed to secure a goal properly within the scope of legislative action.

In the present case neither the method of classification nor its design is proper. The classification sets apart those counties which were participating on July 19, 1957, from those which were not, population playing no part in the separation. It bears no reasonable relation to a possible goal of stimulating counties to create health departments since it cuts off an incentive to do so without warning. In this connection it should be noticed that the classification was not established by the Local Health Administration Law of 1951, where no time limit for participation was set forth, but by the clause in Act No. 95A of 1957. The classification must be viewed from the time it was created, and the fact that counties had ample time to participate prior to passage of the cutoff provision is irrelevant since during none of that time did any county have notice that there would be a cutoff. We need not consider the propriety of the legislature's

5. Commonwealth ex rel. Fertig v. Patton, 88 Pa. 258 (1878); Commonwealth ex rel. Brown v. Gumbert, 256 Pa. 531, 100 Atl. 990 (1917).

6. Haverford Township v. Siegle, 346 Pa. 1, 28 A. 2d 786 (1942).

7. See Loomis v. Philadelphia School District Board of Education, 376 Pa. 428, 103 A. 2d 769 (1954); Terenzio v. Devlin, 361 Pa. 602, 65 A. 2d 374 (1949); Mason-Heflin Coal Co. v. Currie, 270 Pa. 221, 113 Atl. 202 (1921).

establishing a time in the future as the cutoff date. It did not do so. Here, the date carries with it an inbred unreasonableness.

A legislative attempt to restrict eligibility to counties specifically named in either Act No. 95A or the Local Health Administration Law would be improper; in either of these cases the prohibition of article III, sec. 7, would apply to strike down the provision. We feel that the operation of this section should be the same where the special and local character of the statute is of equal effect, though more indirectly worded.

For this reason it is our opinion that the provision of Act 95A restricting eligibility for State grants to counties participating in the local health program as of the effective date of the act is unconstitutional. You are advised, accordingly, that this provision should be disregarded when making grants from the appropriated sum and that counties which now or hereafter meet the requirements of the Local Health Administration Law of August 24, 1951, P. L. 1304, to receive grants from the Commonwealth are entitled to receive the same from the appropriated funds.