And now, March 9, 1976, the appeal from revocation is denied.

## Appeal of George W. Pepperman Post No. 36 Serviceman's Club, Inc.

*William L. Knecht,* for appellant.
*Sydney A. Simon,* for Liquor Control Board.

RAUP, *J.*, January 15, 1976—Before the court is the appeal of the George W. Pepperman Post No. 36 Serviceman's Club, Inc. (hereafter "post") from the revocation of its club license by the Pennsylvania Liquor Control Board. After hearing, the court makes the following findings:

For many years prior to June 1972, appellant owned a club license for the sale of alcoholic beverages and operated a club at 108 Market Street in the Borough of Jersey Shore. The Agnes flood of June 22-23, 1972, caused extensive damage to the existing facility, as a result of which the post was forced to suspend its operation. The club license was returned to the Pennsylvania Liquor Control Board for safekeeping. A flood disaster renewal project was undertaken by the Lycoming County Redevelopment Authority in the Borough of Jersey Shore as a result of the Agnes flood, and in September of 1972, appellant's property was placed on the tentative list of properties to be acquired. The post endeavored to obtain permission to demolish the building, which was not salvageable, with the expectation of rebuilding on that same location. However, such a proposed structure was not con-

sidered by the borough to meet the current requirements of the zoning ordinance with respect to off-street parking, and, accordingly, plans for construction on that site were abandoned. The property remained on the acquisition list for the renewal project which received final approval by the Borough of Jersey Shore and the Federal government in June of 1973. In September of 1973, authority was received from the Federal government for the redevelopment authority to proceed with acquisitions, and the acquisition of the post property was consummated on January 29, 1975, through the payment by the authority to the post of the sum of $15,780. Until receipt of this payment, appellant, a small American Legion club in a small borough, was without resources to consummate a purchase of a new building.

Meanwhile, as soon as it became apparent that the post would not be able to rebuild at the Market Street location, its building committee began to search for an alternate site. Various possible sites were investigated, which involved, in some instances, expenditure of funds for title searches or percolation tests. Until mid-1974, the attempts to find a new site were frustrated for such reasons as inability to obtain zoning approval, inadequate access, proximity to churches or high land cost. Eventually, in the fall of 1974, an agreement was entered into with Irving Shalett to purchase a property at 320 Seminary Street in Jersey Shore. A necessary zoning variance was approved by the Zoning Hearing Board of Jersey Shore Borough. Although the post was unable to consummate the sale until the receipt of the condemnation money from the redevelopment authority, it, nevertheless, began construction in the fall of 1974 when

the agreement of sale was executed. Once the condemnation money was transferred on January 29, 1975, the deed was immediately executed from the seller to the post. Thereupon, in February of 1975, a request for renewal of the license was submitted to the Pennsylvania Liquor Control Board. The board took the position, and continues to assert, that it is without power to renew the license for the reason that more than two years have expired since it was surrendered for safekeeping.

The board acted under color of the Act of April 12, 1951, P.L. 90, 47 P.S. §4-474, which provides:

"Whenever a club license has been returned to the Board for the benefit of the licensee due to the licensed establishment not having been in operation for any reason whatsoever for a period of time not exceeding fifteen (15) days, the license shall be held by the board for the benefit of the licensee for a period of time not exceeding one year, or, upon proper application to the board, for an additional year, and the license shall be revoked at the termination of the period, and transfer of the license shall not be permitted after the termination of the period."

The first issue raised by appellant is whether section 4-474 violates the constitutional prohibition against special class legislation: Pa. Constitution, Art. III, sec. 32. This enactment applies only to club liquor licenses, whereas other licenses, such as hotel and restaurant licenses, are governed by section 7.31 of Title 40 of the Pennsylvania Code, which provides:

"Section 7.31. Surrender of licenses in certain cases.

"(a) Any licensee whose licensed establishment

is not in operation for a period of 15 consecutive days for any reason shall return his license and, if a liquor license, his Wholesale Purchase Permit Card, to the Board not later than the expiration of the 15 day period. The return of such license and card will not invalidate the license, which will be held for the benefit of the licensee and be available for his use when operations are resumed at the licensed premises, or for transfer. . . .

"(d) No license surrendered to the Board, nor any renewal thereof in possession of the Board, will be held for the benefit of the licensee for a period exceeding one year from the date of surrender, *except where, in the opinion of the Board, circumstances beyond the control of the licensee prevent reactivation and,* except as provided in section 474 of the Liquor Code (47 P. S. Sec. 4-474), with regard to club licenses. Failure of the licensee to lift the license and resume operation of the licensed business or to effect a transfer of the license within the one year period shall be sufficient cause for revocation of the license." (Emphasis supplied.)

Prior to adoption of section 4-474 in 1968, the general provisions of section 7.31 were applicable to club licenses, and the facts of this case would certainly have supported a finding by the board that the reactivation of the post's license within two years of the Agnes flood was prevented by circumstances beyond the control of licensee; and the board would have had discretion to reissue the license, as it, in fact, could do for a hotel or restaurant licensee today. The question presented is whether the special restrictions as to clubs in section 4-474, can be validly imposed by the legislature.

The applicable constitutional principles were set forth by our Superior Court in a recent decision:

"Reviewing the constitutionality of an Act of Assembly we are guided by well established principles. An Act is cloaked with a strong presumption of constitutionality, Lemon v. Kurtzman, 411 U.S. 192 (1973), and 'will not be declared unconstitutional unless it *clearly*, *palpably* and *plainly* violates the Constitution.' Daly v. Hemphill, 411 Pa. 263, 271, 191 A.2d 835, 840 (1963). The burden of proof is on the party attacking the constitutionality of the statute, and all doubt must be resolved in favor of sustaining the legislation. Milk Control Comm. v Battista, 413 Pa. 652, 198 A. 2d 840 (1964).

"Appellant initially asserts that the Act in question is special legislation standing in violation of article III, section 32 of the Pennsylvania Constitution ('The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law . . .'. Pa. Const. art. III, section 32). It is, of course, 'a fundamental principle of our constitutional form of government that the legislative power ought to be exercised in a general and impartial manner and that new law ought not be made in the individual case.' Article III, section 32 was adopted 'to put an end to the flood of privileged legislation for particular localities and for private purposes. . . .' Haverford Township v. Siegle, 346 Pa. 1, 6, 28 A.2d 786, 788 (1942).

"Classification per se, however, is not inherently unconstitutional. 'A classification in and of itself is not prohibited . . . as long as the classification is reasonable and founded upon a genuine distinction.' Bargain City U.S.A., Inc. v. Dilworth, 407 Pa.

129, 133, 179 A.2d 439, 442 (1962). 'Legislation for a class distinguished from a general subject is not special, but general, and classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition.' Dufour v Maize, 358 Pa. 309, 313, 56 A.2d 675, 677 (1948). It is not for the courts to substitute their judgment for that of the legislature.

" 'The test is, not wisdom, but good faith in the classification.' Seabolt v. Commissioners, 187 Pa. 318, 323, 41 A. 22, 23 (1898). The duty of the courts is to consider only whether the legislature had any reasonable basis for making the classification": Freezer Storage v. Cork, 234 Pa. Superior Ct. 441, 445-446, 341 A.2d 184 (1975).

Both counsel and the court have searched in vain for a legislative history of section 4-474 which would provide an indication that the "classification is reasonable and founded upon a genuine distinction"; nor has the board been able to suggest such a justification.

Access to clubs is limited to members and their guests, while hotel and restaurant licensed establishments are open to the general public. This distinction is the apparent justification for the imposition of special restrictions upon the latter classifications, restrictions relating to days when beverages cannot be sold (election day and, until recently, Sundays); hours of operation, use of bar maids (see Kovalchuk Liquor License Case, 202 Pa. Superior Ct. 389, 195 A. 2d 282 (1963)); quotas (there must be an opening in a municipality's quota before a club license issues, but, after

issuance, the license does not count against the quota), etc.

However, this distinction, the private nature of a club, would not appear to support a special and more restrictive law on the revocation of a surrendered club license.*

We are mindful that a sister county has reached a contrary conclusion. In Appeal of Chester County Tavern Association, Club Liquor License, 20 Chester 198 (1971), the Chester County Court of Common Pleas held that section 4-414 does not violate the Pennsylvania constitutional prohibition against special class legislation. There, a club licensee had lost its premises, surrendered its license, and "had attempted to effect a transfer of the club license for the premises but was unable throughout the entire two-year time to find suitable premises in which to locate the club license": 20 Chester at 200.

The Chester County court apparently considered that, if there is a sufficient distinction between classes to justify *some* special restrictions for one class (as was held in Kovalchuk, supra, with respect to permitting bar maids in clubs but not in hotels/restaurants), then the legislature is free to

---

*Ironically, it may be that the legislature, in enacting the special law (section 4-474), intended that it give a more favored status to clubs than to other licensees. Under the general statute (section 7.31), the surrendered license is held for the benefit of the licensee for only one year unless "circumstances beyond the control of the licensee" are shown; whereas club licensees get a second year simply for the asking, prior to revocation. However, the fact remains that the general statute would clearly permit return of the license under the facts of this case, while the special class enactment will not.

treat the classes separately in respects unrelated to the distinction.

We consider, however, that the justification for the particular special legislation must be found in a *relevant* distinction between the classes. Otherwise, as here, the special enactment is offensive to article III, sec. 32, of the Pennsylvania Constitution; and we so hold.

### ORDER

And now, January 15, 1976, for the reasons set forth in the foregoing opinion, this matter is hereby remanded to the Pennsylvania Liquor Control Board for a determination as to whether circumstances beyond the control of appellant prevented reactivation of its license, and, if so, to renew said license and return same to appellant, in accordance with the provisions of section 7.31 of Title 40 of the Pennsylvania Code.