HARRISBURG SCHOOL DISTRICT, Harrisburg School Board, Joseph C. Brown, Linda M. Cammack, Kenneth Leister, Judith C. Hill, Wanda R.D. Williams, individually, and as parent and natural guardian of Rauwshan Williams, Ricardo A. Davis, individually and as parent and natural guardian of Jeremiah Stephenson and Tiffany Davis, Clarice Chambers, Joy Ford, individually and as parent and natural guardian of Samantha Wilson, Grace Bryant, Glenise Cobb–Wingfield, individually, and as parent and natural guardian of Johnathan Wingfield and Asia Wingfield, and Citizens Concerned for Children First, By Dwayne Blount and Dale Carter, Trustees Ad Litem, Petitioners,

v.

Charles B. ZOGBY, Secretary of Education, Commonwealth of Pennsylvania, Stephen R. Reed, Mayor of Harrisburg, Jane/John Doe I, Jane/John Doe II, Jane/John Doe III, Jane/John Doe IV, Jane/John Doe V, Potential Members of the Board of Control for the Harrisburg School District, Respondents.

Commonwealth Court of Pennsylvania.

Argued Dec. 5, 2001.
Decided Jan. 3, 2002.

No appearance entered on behalf of petitioners.

Nathan J. Waters, Harrisburg, for respondent, Potential Members of Hbg. Sch. Dist. Bd. of Control.

Todd P. Prugar, Harrisburg, for respondents, S. Reed and Jane/John Doe.

Daniel J. Doyle, Harrisburg, for respondent, C. Zogby.

Linda J. Shorey, Harrisburg, for amicus curiae, R. Jubelirer and M. Ryan.

Before DOYLE, President Judge, COLINS, Judge, McGINLEY, Judge, SMITH, Judge, PELLEGRINI, Judge, KELLEY, Judge, and LEADBETTER, Judge.

PELLEGRINI, Judge.

Before this Court is a motion for judgment on the pleadings filed in our original jurisdiction by the Individual Petitioners [1] in the above-captioned action. This case deals with the important issue of whether the General Assembly, by enacting legislation giving select mayors power over school district affairs, violated the United States and Pennsylvania Constitutions, especially those provisions under the Pennsylvania Constitution that were adopted by the electorate to restrict the General Assembly's powers regarding municipalities and school districts.

---

1. Harrisburg School District and Harrisburg School Board discontinued the action, and only the individuals and private organizations remain Petitioners in this case.

This issue was twice before this Court, and its history bears repeating as it is germane to the outcome of this matter. On May 10, 2000, the Education Empowerment Act (Act 16)[2] was passed allowing the Secretary of Education to place the control of a school district in a Board of Control where the school district had a history of low test scores, i.e., failure of at least 50% of the school district's students to meet Pennsylvania System of School Assessment test standards. Section 1707–B of Act 16, 24 P.S. § 17–1707–B, referred to as the "Reed Amendment," created a classification for "a school district of the second class with a history of low test performance which is coterminous with the city of the third class which contains the permanent seat of government of this Commonwealth...." When a school district fell within that classification, the mayor of the third class city was required to appoint an empowerment team to develop a plan to improve the school district.

Harrisburg School District fell within that classification and filed a petition for review on behalf of itself and Individual Petitioners challenging the constitutionality of Act 16 in nine counts. Specifically, the petition alleged that Section 1707–B violated Article III, Section 32 of the Pennsylvania Constitution which prohibits the General Assembly from passing a special law regulating school districts and violated guarantees of equal protection and due process under the United States and Pennsylvania Constitutions. It also alleged that Act 16 violated various constitutional provisions regarding the legislative process for passing legislation. Harrisburg School District and Individual Petitioners also filed an application for a preliminary injunction based on equal

protection arguing that Section 1707–B was unconstitutional because it created a class of only one member. By order dated June 30, 2000, we granted the preliminary injunction enjoining Act 16 from taking effect pending further order of this Court. The Commonwealth appealed the grant of the preliminary injunction to the Pennsylvania Supreme Court which affirmed our decision. *See Harrisburg School District v. Hickok*, 563 Pa. 391, 761 A.2d 1132 (2000).

The Commonwealth filed preliminary objections to the petition which were sustained in part and overruled in part. The preliminary objections to the equal protection/special law claims were overruled, but the objections to all other counts were sustained and those claims dismissed after we determined that Act 16 violated Article III, Section 32 of the Pennsylvania Constitution as special legislation. *See Harrisburg School District v. Hickok*, 762 A.2d 398 (Pa.Cmwlth.2000).

Subsequently, the General Assembly amended Act 16 by passing Act 91 of 2000, the School Improvement statute. It removed the challenged language from Section 1707–B and redefined the "class" of school districts subject to mayoral control. In its place, Act 91 created a classification that applied to "a school district of the second class which has a history of extraordinarily low test performance, which is coterminous with a city of third class that has opted under the 'Optional Third Class City Charter Law' or 53 Pa.C.S. § PT. III, subpt. E to be governed by a mayor-council form of government and which has a population in excess of 45,-000." 24 P.S. § 17–1707–B. Act 91 expanded the powers of the Board of Control but did not make any changes to the au-

---

2. The Education Empowerment Act is an amendment to the Public School Code of 1949, Act of March 10, P.L. 30, 1949, *as* *added by* the act of May 10, P.L. 44, 2000, 24 P.S. §§ 17–1701–B—17–1716–B.

thority given to the mayor of a relevant third class city. The statute also added the following definition to Act 16 for a history of extraordinarily low test performance: "A combined average of sixty per centum or more of students scoring in the bottom measured group of twenty-five per centum or below basic level of performance on the Pennsylvania System of School Assessment Tests under 22 Pa. Code ch. 4 (relating to academic standards and assessment) in math and reading in the most recent two school years for which scores are available. 24 P.S. § 17–1702–B." Because this amendment replaced the challenged language in Section 1707–B, we granted the Commonwealth's motion to dismiss the action as moot. The preliminary injunction was also dissolved.

Because Harrisburg School District and Individual Petitioners believed that this amendment was similarly infirm, they filed another petition for review challenging the constitutionality of Act 91. In Count I, they alleged a violation of Article III, § 32 of the Pennsylvania Constitution; in Count II, a violation of the equal protection provisions of the United States Constitution; in Count III, a violation of Article IX, Section 3 of the Pennsylvania Constitution because it unconstitutionally changed the form of

Harrisburg's government; in Count IV, a violation of Article III, § 31 of the Pennsylvania Constitution because it impermissibly gave the Board of Control power to levy taxes, and in Count V, a violation of Article VI, Section 7 of the Pennsylvania Constitution because it transferred the powers of the Harrisburg School Board to the Board of Control. Harrisburg School District and Individual Petitioners also requested a preliminary injunction which was denied and they appealed to the Supreme Court which affirmed the denial.

The Commonwealth filed preliminary objections to the second petition which were sustained in part and overruled in part. In our June 22, 2001 decision, the preliminary objections to counts IV and V were sustained, but the objections to counts I (Article III, Section 32), II (equal protection) and III (Article IX, Section 3) were dismissed. *See Harrisburg School District v. Hickok,* 781 A.2d 221 (Pa. Cmwlth.2001).[3]

■ Individual Petitioners (as did Harrisburg School District) then filed a motion for judgment on the pleadings only against the Secretary of Education, which is presently before this Court.[4] They raise

3. The Secretary of Education informs us of a "misapprehension" on the part of the Court when in footnote 8 of our *Harrisburg School District,* 781 A.2d 221 (Pa.Cmwlth.2001) opinion, we compared the mayor-council forms of government created under Third Class City Optional Charter Law with those created by the Home Rule Charter and Optional Plans Law, and finding them to have virtually identical government structures, concluded that the amendment violated Article III, Section 32 of the Pennsylvania Constitution because it created special legislation. The Secretary of Education informs us that Act 91 "includes third class cities formed either under the Optional Third Class City Charter Law or the Home Rule Charter and Optional Plans Law" and "the class is not nearly as small as it seemingly appeared to the Court." The Sec-

retary of Education's understanding of our footnote misses the intended point. What we were conveying was that if the mayor-council forms of government are essentially the same under the Home Rule Charter and Optional Plans Law and the other Mayor–Council Home Rule Optional Plans, then why does the amendment only apply to third class cities and not all cities?

4. When ruling on a motion for judgment on the pleadings in our original jurisdiction, we must view all of the opposing party's allegations as true, and only those facts that the opposing party has specifically admitted may be considered against the opposing party. *Parish v. Horn,* 768 A.2d 1214 (Pa.Cmwlth. 2001). We may consider only the pleadings themselves and any documents properly at-

the identical issues they raised in the prior actions and were decided in their favor:

- whether Act 91 is unconstitutional because it violates Article III, Section 32 of the Pennsylvania Constitution;
- whether Act 91 violates the equal protection guarantees of the United States and Pennsylvania Constitutions; and
- whether Act 91 unconstitutionally vests powers in the Mayor of Harrisburg without approval of the Harrisburg voters in violation of Article IX, Section 3 of the Pennsylvania Constitution.

■ We have fully explored each and every one of these arguments in our prior decision regarding the preliminary objections and our answers remain the same; Section 1707–B of Act 91 of 2000 violates the above provisions of the Pennsylvania Constitution. In arriving at this decision, we note that the merits of the legislative scheme or the motives behind its passage are irrelevant. The touchstone of legislation is not that it is laudable or even that it reflects the public will, but that it is also within the limits of our Constitution. As aptly stated by Justice Dean in *Perkins v. Philadelphia*, 156 Pa. 539, 27 A. 356 (1893):

> Another point made in the argument before us—that the public sentiment of Philadelphia with practical unanimity demanded the passage of this law—was doubtless more effectively urged before the legislature. But the question presents itself to us in a different shape. We do not believe the intelligent public sentiment of the greatest city of the Commonwealth demands the accomplishment of a lawful purpose by unlawful means. Unconstitutional statutes are the very essence of lawlessness. Even if the unanimous public sentiment of the city demanded the enforcement of the act, we could not heed it. Public sentiment properly may move courts in matters wholly discretionary, such as the adoption of rules to speed causes, afford quick relief to suitors, and eradicate abuses in the administration of justice; but such sentiment can have no place in the interpretation of a constitution. The public sentiment expressed in that instrument is the only sentiment of which a court can take notice. It contains the deliberate, emphatically expressed sentiment of the whole people. They, and they alone, can change it, but even they cannot trample upon it. If laws in conflict with it be passed by the legislature, be approved by the governor, and sustained by this court, that is revolution. It is no less revolution because accomplished without great violence. It matters little to the house owner whether the structure intended to shelter him be blown up by dynamite, or the foundation be pried out, stone by stone, with a crowbar; in either case he is houseless. There can be no stability in a free government if successful assaults in any department be made on the fundamental law, the supreme law, deliberately established by the whole people as a rule of action in all governmental matters affecting their welfare.

*Id.* at 567–68, 27 A. at 361–62.

■ Because there are no factual issues left to be determined, we hold that Section 1707–B of Act 91 of 2000 is unconstitutional and grant the Individual Petitioners'

---

tached thereto. *Id.* We may grant a motion for judgment on the pleadings only when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. *Id.*

motion for judgment on the pleadings.[5] Accordingly, Section 1707–B of Act 91 of 2000 is declared unconstitutional; the Commonwealth is enjoined from carrying out or acting in any way pursuant to Section 1707–B of Act 91 of 2000; and the Secretary of Education's certification of the Harrisburg School District as an Education Empowerment District under Act 91 of 2000 is voided.

Judge LEADBETTER dissents.

### ORDER

AND NOW, this *3rd* day of *January*, 2002, Individual Petitioners' motion for judgment on the pleadings is granted. Section 1707–B of Act 91 of 2000 is declared unconstitutional; the Commonwealth is enjoined from carrying out or acting in any way pursuant to Section 1701–B of Act 91 of 2000; and the Secretary of Education's certification of the Harrisburg School District as an Education Empowerment District under Act 91 of 2000 is voided.

---

**5.** The Secretary of Education argues that we should not grant Petitioners' motion for judgment on the pleadings because there are unresolved factual issues as to Counts I and II. He argues that he should be allowed to offer expert testimony to support the General Assembly's determination that this law should apply only to third class cities of 45,000 or more population; that it should apply only to school districts with a 60% failure rate; that it should apply only to a mayor-council form of government; and that it should apply only to municipalities whose boundaries are coter-

minous with school districts with a 60% failure rate. However, "to determine whether the General Assembly was justified in enacting a statute, this Court must look to the language of the statute, the underlying purpose of the statute and its reasonable effect." *Wings Field Preservation Associates v. Commonwealth, Department of Transportation*, 776 A.2d 311, 321 (Pa.Cmwlth.2001). In this case, there is only a question of law of whether the net effect of all of those sub-classifications, reasonable or not, combine to create special legislation.