614 A.2d 1128

HARRISTOWN DEVELOPMENT CORP., Appellee

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF GENERAL SERVICES, et al.

Appeal of DEPARTMENT OF GENERAL SERVICES and Ernest D. Preate, Jr., Attorney General.

Appeal of Richard TILGHMAN.

Supreme Court of Pennsylvania.

Argued May 5, 1992.

Decided Sept. 21, 1992.

Reargument Denied Nov. 2, 1992.

Calvin R. Koons, Sr. Dep. Atty. Gen., John G. Knorr, III, Chief Dep. Atty. Gen., for appellant.

Andrew S. Gordon, Harrisburg, for Richard Tilghman.

James W. Evans, William B. Ball, Harrisburg, for Harristown Development Corp.

Calvin R. Koons, Sr., Sr. Dep. Atty. Gen., for Department of General Services, and Ernest D. Preate, Jr.

Before NIX, C.J., and LARSEN, FLAHERTY, MC DERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

FLAHERTY, Justice.

Act 153 of 1988 requires that nonprofit corporations which collect in excess of $1,500,000 in proceeds from the rental of property to the Commonwealth be subject to the terms of the Sunshine Act, 65 P.S. §§ 271–286, and the Right to Know Law, 65 P.S. §§ 66.1–66.4. The basic question raised by this case is whether Act 153 is applicable to Harristown Development Corporation ("Harristown"), and if so, whether it is constitutional.

On January 5, 1989 Harristown filed an action addressed to the original jurisdiction of Commonwealth Court seeking declaratory and injunctive relief against the Department of General Services, the Attorney General of Pennsylvania, and Senator Richard Tilghman. Harristown's claim was that Act 153 does not subject it to the Sunshine Act and the Right to Know Law; that Act 153 violates Art. I, Secs. 1, 17 and 26 of the Constitution of Pennsylvania as well as Art. I, Sec. 10, Clause 1 (the contracts clause), and Sec. 1 of the Fourteenth

Amendment (the equal protection clause) of the United States Constitution. Tilghman counterclaimed, arguing that Act 153 is constitutional and seeking an injunction requiring Harristown to comply with the Sunshine Act. Both Harristown and Tilghman moved for summary judgment, with Tilghman claiming legislative immunity from the injunctive relief sought against him by Harristown.

Commonwealth Court sitting en banc granted both parties' motions for summary judgment. With respect to Tilghman's motion, it held that Tilghman was insulated by legislative immunity from the claims filed against him. With respect to Harristown's motion, the court held that Harristown was not an agency within the meaning of Act 153; that Act 153 was unconstitutional as a special law, pursuant to Art. III, Sec. 32, PA. CONST., and that it was unconstitutional as an impairment of contracts pursuant to Art I, Sec. 17, PA. CONST. Judge Doyle was the lone dissenter to the six-judge majority.

Harristown, the Commonwealth and Tilghman all appealed. Because the action arose in the original jurisdiction of Commonwealth Court, appellants are before this court pursuant to 42 Pa.C.S. § 723.[1] For the reasons that follow, we reverse the order of Commonwealth Court granting summary judgment to Harristown on its claim that Act 153 is unconstitutional, and we vacate the order of Commonwealth Court granting summary judgment to Tilghman on his claim of legislative immunity.

Harristown is a nonprofit corporation which is significantly engaged in activities involving the redevelopment of Harrisburg's central business district, negotiating for the acquisition and disposition of real estate, and managing real estate developments and shopping areas. One aspect of Harristown's activities is the leasing of properties to the Commonwealth.

1. 42 Pa.C.S. § 723(a) provides:
   (a) General rule. The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the Commonwealth Court entered in any matter which was originally commenced in the Commonwealth Court except an order entered in a matter which constitutes an appeal to the Commonwealth Court from another court, a district justice or another government unit.

In fact, Harristown is the largest lessor of space to the Commonwealth, and in 1989, it received $13 million of its $19 million in revenues from the Commonwealth.

In 1988 Governor Casey signed into law a bill[2] which subjected nonprofit corporations which leased land, offices or accommodations to the Commonwealth to the requirements of the Sunshine Act and the Right to Know Law. Following protests from various nonprofit organizations, the earlier bill was amended to apply only to nonprofit corporations which leased property to the Commonwealth in excess of $1,500,000:

> Any nonprofit corporation which leases lands, offices or accommodations to the Commonwealth for any department, board, commission or agency with a rental amount in excess of one million five hundred thousand dollars ($1,500,000) per year shall be deemed an agency as defined by the act of June 3, 1986 (P.L. 388, No. 84), known as the "Sunshine Act," and the act of June 21, 1957 (P.L. 390, No. 212), referred to as the Right–to–Know–Law, and any such nonprofit corporation shall be subject to and governed by the provisions of the "Sunshine Act" and the Right–to–Know–Law.

Act 153 of 1988, 71 P.S. § 632(d).

The Right to Know Law and the Sunshine Act provide, respectively, that records and meetings of covered agencies shall be open to citizens of the Commonwealth. See 65 P.S. § 66.1 et seq., the Right to Know Law, and 65 P.S. § 271 et seq., the Sunshine Act.

By its terms, then, Act 153 defines Harristown as an agency under the Sunshine Act and the Right to Know Law, and subjects it to the requirements of these acts. This notwithstanding, Commonwealth Court held and Harristown claims that it is not subject to the requirements of the Sunshine Act and the Right to Know Law. The first question which we address, then, is whether Commonwealth Court was in error in holding that Harristown is not an agency within the meaning of these acts.

2. Act 122 of 1988.

The rationale of Commonwealth Court's remarkable holding is that Harristown is not an agency as that term is defined in the Sunshine Act or the Right to Know Law;[3] that this court has held that Temple University, which is analogous to Harristown, is not an agency under the Right to Know Law, *Mooney v. Temple University Board of Trustees,* 448 Pa. 424, 292 A.2d 395 (1972); that Harristown may not be deemed an agency merely because it does business with the Commonwealth; and that under Harristown's charter, it is not an agency.

The answer to these arguments, of course, is that Harristown is an agency if the General Assembly says it is. It is axiomatic that within constitutional limits, the General Assembly is empowered to pass legislation, define the terms of its legislation, and amend its definitions as it sees fit, and the fact that Harristown does not meet the original definition of agen-

---

**3.** The Right to Know Law defines an agency as:

"Agency." Any department, board or commission of the executive branch of the Commonwealth, any political subdivision of the Commonwealth, the Pennsylvania Turnpike Commission, or any State or municipal authority or similar organization created by or pursuant to a statute which declares in substance that such organization performs or has for its purpose the performance of an essential governmental function.

65 P.S. § 66.1(1). The definition of agency included in the Sunshine Act is similar:

"Agency." The body, and all committees thereof authorized by the body to take official action or render advice on matters of agency business, of all the following: the General Assembly, the executive branch of the government of this Commonwealth, including the Governor's Cabinet when meeting on official policy-making business, any board, council, authority or commission of the Commonwealth or of any political subdivisions of the Commonwealth or any State, municipal, township or school authority, school board, school governing body, commission, the boards of trustees of all state-aided colleges and universities, the councils of trustees of all State-owned colleges and universities, the boards of trustees of all state-related universities and all community colleges or similar organizations created by or pursuant to a statute which declares in substance that the organization performs, or has for its purpose the performance of, an essential governmental function and through the joint action of its members exercises governmental authority and takes official action. The term does not include a caucus nor a meeting of an ethics committee created under rules of the Senate or House of Representatives.

65 P.S. § 273.

cy as that term appears in the Sunshine Act and the Right to Know Law is of no consequence, for Act 153 changes the definition of agency in those acts. With respect to the *Mooney* case, there is no application, for Temple University, unlike Harristown, was never defined in legislation as an agency.[4] And finally, it is simply inaccurate, without qualification, to say that the General Assembly may not define an entity as an agency merely because it does business with the state, or that the entity's charter is of any significance in deciding whether the entity is an agency for the purposes of Act 153. In short, Commonwealth Court's determination that Harristown is not subject to the requirements of the Sunshine Act and the Right to Know Law because it is not an agency is in error. Harristown, which leases property to the Commonwealth far in excess of $1,500,000, is plainly an agency as that term is defined by Act 153.

Commonwealth Court also held and Harristown argues that even if Harristown is an agency, Act 153 is unconstitutional in that it violates Art III, Sec. 32[5] and Art I, Sec 17 of the Pennsylvania Constitution.[6]

■ Article III, Section 32 prohibits the passage of any special law which can be provided for by general law. Harristown's claim is that since it is the only nonprofit corporation in the Commonwealth which leases in excess of $1,500,000 worth of space to the government, Act 153 was written specially for it in violation of Art. III, Sec. 32. On appeal to this court, Harristown also contends that Act 153 violates the equal

4. In *Mooney* this court construed the Temple University–Commonwealth Act to exempt the university from the Inspection and Copying Records Act, which was at issue in that case and which provided for the copying of certain records in the possession of state or municipal authorities or similar organization. *See Mooney* at 425–27, 292 A.2d at 396–97.

5. Art III, Sec. 32 PA. CONST. provides:
   The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law....

6. Art I, Sec. 17 PA. CONST. provides:
   No ex post facto law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed.

protection provision of the Fourteenth Amendment of the United States Constitution.

The analysis of both federal and state claims is essentially the same. As this court stated in *Laudenberger v. Port Auth. of Allegheny Co.*, 496 Pa. 52, 67 n. 13, 436 A.2d 147 at 155 n. 13 (1981):

Appellees' contentions concerning the Equal Protection Clause of the federal Constitution and Art. III, § 32 of the Pennsylvania Constitution may be reviewed simultaneously, for the meaning and purpose of the two are sufficiently similar to warrant like treatment.

*See also Leventhal v. City of Philadelphia*, 518 Pa. 233, 240, 542 A.2d 1328, 1332 (1988), citing *Tosto v. Pa. Nursing Home Loan Agency*, 460 Pa. 1, 14, 331 A.2d 198, 204 (1975) ("special laws provision 'requires only that a classification must have some rational relationship to a proper state purpose' "); *Kroger Co. v. O'Hara Twp.*, 481 Pa. 101, 118–19, 392 A.2d 266, 274–75 (1978); *See also Com. v. Parker White Metal Co.*, 512 Pa. 74, 515 A.2d 1358 (1986).

Thus, our inquiry is whether there is any rational basis pursuant to which the classification may have been made. Of course, in pursuing this analysis, as in all challenges to the constitutionality of acts of the General Assembly, there is a strong presumption of constitutionality, and the party challenging the act has a heavy burden of persuasion. As this court has stated repeatedly, legislation will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution, with any doubts being resolved in favor of constitutionality. 506 Pa. 364 at 370, 485 A.2d 732 at 735.

Plainly, there is a rational basis for the classification.[7] Because Harristown is the largest supplier of rented space to the Commonwealth, and because the viability of state govern-

7. Although Harristown has taken pains to point out that there is no legislative statement of purpose, it overlooks the fact that the burden is on it, not on the Commonwealth, to demonstrate that there is no rational basis for the classification. Further, if a reviewing court detects a rational basis, "from whatever source," the statute must be upheld. *Pa. Liq. Cont. Bd. v. Spa Athletic Club*, 506 Pa. 364, 371, 485 A.2d 732, 735 (1984).

ment depends upon assurance that it will continue to be able to have space for its various departments and agencies, the Commonwealth needs to be able to monitor the soundness of Harristown's business operations and to avoid impending difficulty which may threaten Harristown's continued operation and ability to provide rental space for government operations.[8] The statute does not, therefore, violate the Equal Protection Clause of the United States Constitution or Art. III, Section 32 of the Pennsylvania Constitution.[9]

■ Commonwealth Court's last rationale, that Act 153 violates the contracts clause of the Pennsylvania Constitution, is echoed by Harristown in its appeal to this court, with reference to both the federal and state constitutions.[10] Article I, Section 17 of the Pennsylvania Constitution and Article I, Section 10 of the United States Constitution prohibit state laws from impairing the obligations of contracts. Even Har-

---

**8.** A concrete example of the difficulties anticipated by Tilghman is his observation that Harristown is a tax exempt organization which finances its buildings with tax exempt bonds. The bonds pay tax exempt interest, however, only so long as Harristown operates in such a way as to satisfy federal regulations. Should Harristown's tax exempt status be revoked, Tilghman notes the possibility that there would be a default on bond payments, that Harristown may be sued by its bondholders, and/or that the Commonwealth may be forced to pay increased rent. When the volume of rental payments is so high, the possibility of significant disruption to the Commonwealth is a legitimate concern.

**9.** Harristown also asserts that Act 153 violates Article III, Section 32 of the Pennsylvania Constitution in that it creates a class having only one member. This court has held that a classification of one member is not unconstitutional so long as other members might come into that class. *Haverford Twp. v. Siegle*, 346 Pa. 1, 6, 28 A.2d 786, 789 (1942). Clearly, the class of which Harristown is a member under Act 153 is not closed, and its claim is, therefore, without merit.

**10.** Art. I, Sec. 17 PA. CONST. provides:
No ex post facto law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed.
Art. I, Sect. 10, cl. 1 U.S. CONST. provides:
No state shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility.

ristown admits, however, that the leases between it and the Commonwealth include the following provision:

> During the term of the lease, the Lessee, in its use and occupancy of State Office Building No. 1, and the Lessor shall comply with all present *and future laws,* governmental regulations, and judicial orders applicable thereto. . . . [11]

(Emphasis added.) If the purpose of the contract clauses of the state and federal constitutions is to prevent governmental entities from disrupting existing contractual obligations, and thus, negating the expectations of the parties, that can hardly be a concern here, where the parties expressly agreed to subject themselves to future laws. Moreover, as Tilghman points out, Harristown has not demonstrated on this record that its contracts with the Commonwealth were, in fact, impaired. It receives the same rent and enjoys the same benefits under the contracts with or without Act 153. Harristown's claim that its contracts with the Commonwealth were unconstitutionally impaired is, therefore, without merit.

█ Finally, Harristown asserts that Act 153 deprives it of due process of law. The essence of this claim is that Act 153 prevents Harristown from pursuing its lawful corporate purposes; it transforms Harristown into an agency of government, in violation of the Nonprofit Corporation Law of 1988; it abridges other substantive rights given to Harristown under the Nonprofit Corporation Law; and it imposes new duties on a past transaction.

It is a general principle of statutory construction that particular terms in conflicting statutes control general terms:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later

11. Harristown's president conceded in his testimony that this clause is also contained in the lease for State Office Building No. 2.

and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa.C.S. § 1933. The terms of Act 153 are particular in that only some persons leasing space are affected. The terms of the Nonprofit Corporation Law, on the other hand, are general in that they are intended to apply to all nonprofit corporations. Assuming, as Harristown argues, that Act 153 abrogates some of the provisions of the Nonprofit Corporation Law and that there is an irreconcilable conflict between the two statutes, the special provisions of Act 153 clearly take precedence over the Nonprofit Corporation Law. Further, even if the Nonprofit Corporation Law were more recently enacted, in order for it to control, Harristown would have to show that the General Assembly *manifestly* intended for the general provisions of the Nonprofit Corporation Law to control the particular provisions of Act 153, a showing that is conspicuously absent on this record. *See* 1 Pa.C.S. § 1933, above. It is apparent, therefore, that the conflicts between the Nonprofit Corporation Law and Act 153 are controlled by the provisions of Act 153.

As to the assertion that Act 153 imposes new duties upon a past transaction, and therefore violates due process, this court has stated that an act is not improperly retroactive when it applies to existing conditions even if those conditions have arisen at some prior time. *Gehris v. Com. Dept. of Trans.*, 471 Pa. 210, 369 A.2d 1271 (1977). In fact, if this were not the rule, it is difficult to conceive of how new laws could ever be enacted, for a new law invariably might be said to apply to past events or conditions. Harristown's due process claims are without merit.[12]

12. Harristown additionally claims that Act 153 violates Art. III, Sec. 6 of the Pennsylvania Constitution, which prohibits amendments of statutes by reference to the statutes intended to be amended unless the statutes to be amended are republished at length.

This claim is denied for two reasons. First, Harristown did not raise it below, and it is, thus, waived. Second, this court has determined that the purpose of Art. III, Sec. 6 was to prevent "sneak legislation." *See L.J.W. Realty Corp. v. Philadelphia*, 390 Pa. 197, 134 A.2d 878 (1957). Act 153 is plain on its face and does not, therefore, implicate Art. III, Sec. 6:

56

For the foregoing reasons, we reverse Commonwealth Court as follows: (1) with respect to the summary judgment in favor of Harristown on the merits of the case, declaring Act 153 unconstitutional, Commonwealth Court is reversed and judgment is entered in favor of the Commonwealth and Tilghman; (2) with respect to summary judgment in favor of Tilghman on the issue of legislative immunity, the order Commonwealth Court is vacated.[13]

LARSEN, J., did not participate in the consideration or decision of this case.

McDERMOTT, J., did not participate in the decision of this case.

"[A]n act which is complete in itself—the purpose, meaning and full scope of which are apparent on its fact—is valid, [and not violative of Article III, section 6], although it may operate to alter, extend or repeal a prior act. . . ."
*Id.* at 205, 134 A.2d at 882.

13. Since judgment is entered in favor of Tilghman on the merits of the case, whether he is entitled to legislative immunity is moot.