761 A.2d 1132

HARRISBURG SCHOOL DISTRICT; Harrisburg School Board; Joseph C. Brown; Linda M. Cammack; Judith C. Hill; Wanda R.D. Williams, Individually, and as Parent and Natural Guardian of Rauwshan Williams; Ricardo A. Davis, Individually, and as Parent and Natural Guardian of Jeremiah Stephenson and Tiffany Davis; Clarice Chambers; Joy Ford, Individually, and as Parent and Natural Guardian of Casel J. Ford; Susan Wilson, Individually, and as Parent and Natural Guardian of Brandi Wilson and Samantha Wilson; Grace Bryant, Individually, and as Parent and Natural Guardian of Corey Bryant;

392

Glenise Cobb–Wingfield, Individually, and as Parent and Natural Guardian of Jhonatha Wingfield and Asia Wingfield, Appellees,

v.

Eugene HICKOK, Secretary of Education, Commonwealth of Pennsylvania; Stephen R. Reed, Mayor of Harrisburg; Tom Ridge, Governor of Pennsylvania; Jane/John Doe I, Jane/John Doe II, Jane/John Doe III, Jane/John Doe IV, Jane/John Doe V, Potential Members of the Board of Control for the Harrisburg School District; Senator Robert C. Jubelirer, President Pro Tempore of the Senate of the Commonwealth of Pennsylvania and Matthew J. Ryan, Speaker of the House of Representatives of the Commonwealth of Pennsylvania, Intervenors, Appellants.

Appeal of Governor Tom Ridge and Secretary of the Pennsylvania Department of Education Eugene Hickok.

Appeal of: Senator Robert C. Jubelirer, President Pro Tempore of the Senate of the Commonwealth of Pennsylvania and Matthew J. Ryan, Speaker of the House of Representatives of the Commonwealth of Pennsylvania, Intervenors.

Appeal of: Stephen R. Reed, Mayor of Harrisburg, and Jane/John Doe, I, Jane/John Doe, II, Jane/John Doe, III, Jane/John Doe, IV, Jane/John Doe, V, Potential Members of the Board of Control for the Harrisburg School District.

Supreme Court of Pennsylvania.

Argued Sept. 12, 2000.

Decided Nov. 27, 2000.

Linda Cadden Barrett, Daniel John Doyle, Ann G. St. Ledger, D. Michael Fisher, Susan Jane Forney, Harrisburg, for Ridge and Hickok.

Marci A. Hamilton, Royce Leon Morris, Atlanta, GA, Steven Edward Grubb, Harrisburg, David M. Steckel, Ronald M. Katzman, Harrisburg, for Harrisburg School Dist., et al.

Todd P. Prugar, Pittsburgh, Thomas Peter Brogan, for Mayer Reed, et al.

Ronald N. Jumper, Harrisburg, amicus curiae for Robert J. Mellow.

Linda J. Shorey, for Matthew J. Ryan.

John P. Krill, for Robert C. Jubelirer.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and SAYLOR, JJ.

## OPINION

FLAHERTY, Chief Justice.

This is an appeal from an order of Commonwealth Court granting appellees' motion for a preliminary injunction to enjoin the enforcement of Section 1707–B (the Reed Amendment) of the Education Empowerment Act (EEA), Act 16 of 2000. The act provides that school districts which have performed poorly be identified and assisted by the Department of Education in improving their performance. At issue in this case is whether the Reed Amendment, Section 1707–B, is unconstitutional insofar as it singles out the schools in Harrisburg for special treatment.[1]

---

1. On June 1, 2000, the Harrisburg School District and School Board, five members of the Harrisburg School Board, and five district residents filed a petition for review in the nature of a complaint in equity for declaratory relief challenging the constitutionality of Act No. 2000–

The EEA provides, inter alia, that the Secretary of Education shall prepare a list of schools which have a history of low test performance, as defined in the act. After the school districts are notified of their placement on the list,

1) The Department of Education establishes an academic advisory team for each affected district;

2) The affected district establishes a team to work with the academic advisory team to develop an improvement plan which is to be submitted to the department;

3) The department reviews the plan and may approve it or request modifications;

(4) The board of directors of the affected district "shall implement" the approved plan, notwithstanding any other provision of law to the contrary.

Sections 1703–B–1704–B.

If the district fails to realize its goals within three years, and if the Secretary elects not to allow an additional year, the statute provides that such district will be placed under a board of control consisting of the secretary of education or his designee and two residents of a county in which the district is located, who are appointed by the Secretary. Section 1705–B. The board of control assumes all powers and duties conferred by law upon the board of school directors except that it may not levy taxes. When the district has met the goals in its improvement plan and no longer has a history of low performance, control is restored to the board of directors. Sections 1706–B; 1710–B.

However, Section 1707–B provides an exception to this plan. If a school district is "a school district of the second class with a history of low test performance which is coterminous with

16 (Act 16) and section 8.1 of Act 16 (the Educational Empowerment Act). Respondents were the governor, the secretary of education of Pennsylvania, the mayor of Harrisburg and five Jane Does representing unnamed members of the board of control for the Harrisburg School District. Senator Robert Jubelirer and Representative Matthew Ryan were permitted to intervene in support of the respondents.

Petitioners also filed an application for special relief in the nature of a preliminary injunction to enjoin the implementation of the provisions of Section 1707–B of Section 8.1 of Act 16.

the city of the third class which contains the permanent seat of government," i.e., if the school district is located in Harrisburg, the secretary is directed not to include the district on the list of schools with low performance, but to immediately certify the district as an "education empowerment district." However, a 1707–B school district does not come under control of the three-member board of control. Instead, the mayor of the coterminous city, i.e., Harrisburg, appoints a five-member board which serves at the mayor's pleasure. Also, the mayor, rather than the district, appoints an "education empowerment team" to develop a plan to improve the performance of the district. The department is not required to appoint an academic advisory team to assist the "empowerment" team in developing the improvement plan. Section 1707–B districts, therefore, are treated quite differently from other districts in that other districts are subject to state input and ultimately, state control if their improvement plans are not realized, whereas Section 1707–B districts are immediately placed under the control of the mayor of Harrisburg.

Relying on Art. III, Section 32 of the Constitution of Pennsylvania, Commonwealth Court held that "The Reed Amendment," i.e., that portion of the Education Empowerment Act which exempts Harrisburg from treatment mandated for other school districts, is unconstitutional because it is special legislation.

The various appellants collectively raise two matters on appeal, whether it was error to conclude that the Reed Amendment was a special law within the meaning of Art. III of the Constitution of Pennsylvania, and whether it was error to issue a preliminary injunction.

 Art. III, Section 32 provides, in part:
The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special law:
1. Regulating the affairs of counties, cities, townships, wards, boroughs or school districts. . . .

As this court stated in *Haverford Twp. v. Siegle,* 346 Pa. 1, 28 A.2d 786, 788 (1942), the proscription against special laws was "adopted for a very simple and understandable purpose—to put an end to the flood of privileged legislation for particular localities and for private purposes which was common in 1873." Nonetheless, Art. III, Section 20 allows the legislature to classify counties, cities, boroughs, school districts and townships according to population and provides that all laws passed with respect to such classes shall be deemed general legislation. As this court stated in *Freezer Storage v. Armstrong Cork Co.,* 476 Pa. 270, 382 A.2d 715, 718 (1978):

> The general rule for determining whether an act is a "special law" violating the Pennsylvania Constitution is this:
>
> > "Legislation for a class distinguished from a general subject is not special, but general; and classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones, used for the purpose of evading the constitutional prohibition. If the distinctions are genuine, the courts cannot declare the classification void, though they may not consider it to be on a sound basis. The test is not wisdom, but good faith in the classification."

The judicial function, then, with respect to classifications, is "to see that the classification at issue is founded on real distinctions in the subjects classified and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition." [2]

■ Plainly, the classification "a school district of the second class with a history of low test performance which is coterminous with the city of the third class which contains the permanent seat of government" merely refers to Harrisburg. However, there is no rational basis for treating the school

---

2. Accord, *Defazio v. Civil Service Commission,* 562 Pa. 431, 756 A.2d 1103 (2000) ("The prohibition against treating people differently under the law does not preclude the Commonwealth from resorting to legislative classifications, provided that those classifications are reasonable rather than arbitrary and bear a reasonable relationship to the object of the legislation.")

district of Harrisburg differently from other school districts with failed educational systems. Additionally, this court has held that a classification is per se unconstitutional when the class consists of one member and it is impossible or highly unlikely that another can join the class. *Harristown Development Corp. v. Dep't of General Services,* 532 Pa. 45, 614 A.2d 1128, 1134 n. 9 (1992). Appellants argue that it is possible that the capital might be moved to another city of the third class which would also meet the other criteria of Section 1707–B, and that the class of cities meeting the criteria of Section 1707–B, therefore, does not consist only of one member. This argument is without merit, for the statute authorizing the location of the capital specifies that there be only one capital city, Act of Feb. 21, 1810, PL 30 § 1. There can, therefore, be no more than one member of the class. Commonwealth Court was correct, therefore, in determining that the Reed Amendment is constitutionally infirm.

The remaining issue, whether Commonwealth Court erred in issuing a preliminary injunction, is moot, for having determined that the lower court was correct in holding the Reed Amendment unconstitutional, any application of the Reed Amendment would have been unlawful and the injunction, which merely prevented the Reed Amendment from being applied, whether it was proper or improper, can have caused no harm. See *Cianfrani v. Com. State Retirement Board,* 505 Pa. 294, 479 A.2d 468 (1984) (An unconstitutional statute is void *ab initio.*)

Affirmed.

Justice NEWMAN did not participate in the consideration or decision of this case.

Justice NIGRO concurs in the result.

Justice SAYLOR files a concurring and dissenting opinion.

SAYLOR, Justice, concurring and dissenting.

I join the majority in holding that, on the record presented, the Commonwealth Court properly granted preliminary in-

junctive relief restraining effectuation of the Reed Amendment to the Education Empowerment Act. I write, however, to emphasize that the applicability of Article III, Section 32's proscription against special legislation should be determined according to the purpose of the constitutional provision, namely, the cessation of favoritism conferred for reasons unconnected to the general public interest. *See generally In re Clark's Estate*, 195 Pa. 520, 526, 46 A. 127, 129 (1900) (stating that "[w]here no legislative effort to evade the restrictions [of a constitutional prohibition against special legislation] appears, the courts will look beyond the mere form of the act, and examine its *true intent and effect*, in light of the purpose of the constitutional restriction"). In this regard, to the extent that the primary purpose and effect of the Reed Amendment is to establish a special, "seat-of-government" school system, the legislation is constitutionally infirm for the reasons stated by the majority. *See also Harrisburg School Dist. v. Hickok*, No. 266 M.D.2000, *slip op.* at 17 (Pa.Cmwlth. June 30, 2000) (Pellegrini, J.) (indicating that such argument "treats the education of students of Harrisburg as more 'special' than that of other students in the Commonwealth, which is simply not true; all students are equally 'special' no matter whether they live in the state capital or not").

Nevertheless, the record also provides a basis for concluding that the General Assembly's action in passing the Reed Amendment was motivated by a goal grounded firmly in the interests of the general citizenry, namely, the repair of a profoundly troubled school system. Although the "seat of government" rubric employed by the Legislature burdens the statute with an indicium of potential invalidity,[1] I would not at this juncture foreclose Appellants from demonstrating that there are objective, performance-based factors which would distinguish the Harrisburg school district from other districts in the Commonwealth demonstrating a poor record of performance, thus providing a rational basis for unique classification

1. This effect would appear to be a perverse one, since Appellants' arguments suggest that this framework may have been employed precisely to *avoid* categorization as special legislation.

and treatment pursuant to the Act. In this regard, I disagree with the majority and the Commonwealth Court that this Court's precedent absolutely forecloses the employment by the Legislature of a fixed class of one to accomplish a permissible, rationally-based objective devoid of aspects of favoritism and special privilege. I also differ with the majority in its characterization that the Commonwealth Court held that the Reed Amendment is unconstitutional—while the Commonwealth Court employed strong language, I read its holding as confined to the determination of Appellees' likelihood of success on the merits as it related to their entitlement to preliminary injunctive relief.

Accordingly, although I would affirm the grant of a preliminary injunction based upon the record of the limited proceedings generated for that purpose, I would presently refrain from determining the ultimate merits of the constitutional question pending before the Commonwealth Court.