**WEST MIFFLIN AREA SCHOOL DISTRICT, East Allegheny School District and South Allegheny School District, Petitioners**

v.

**Dr. Gerald L. ZAHORCHAK, The Commonwealth of Pennsylvania, Department of Education, Duquesne City School District and Duquesne Education Association, Respondents.**

Commonwealth Court of Pennsylvania.

Argued June 11, 2008.
Decided Sept. 4, 2008.

Paul N. Lalley, Huntingdon Valley, for petitioners.

Joseph M. Miller, Asst. Chief Counsel, Harrisburg, for respondents, Dr. Gerald L. Zahorchak and the Department of Education.

Thomas W. Scott, Harrisburg, for respondent, Duquesne Education Association.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and FRIEDMAN, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge.

OPINION BY Judge SMITH–RIBNER.

The West Mifflin Area School District (West Mifflin), the East Allegheny School District (East Allegheny) and the South Allegheny School District (South Allegheny) (together, Petitioners) filed their amended petition for review in the nature of an action for declaratory judgment (Petition) challenging the constitutionality of Sections 5 and 14 of the Act of July 20, 2007, P.L. 278 (Act 45), which amended the Public School Code of 1949 (School Code), Act of March 14, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101 – 27–2702. Section 14 added Section 1607.1 of the School Code, 24 P.S. § 16–1607.1, which provides for the Secretary of Education to assign students to nearby school districts when a third class school district meeting specified criteria relating to a history of low test performance and financial distress eliminates its high school program and makes no arrangements with nearby districts for the transfer of students. Section 5 added Section 1113(b.2), 24 P.S. § 11–1113(b.2), which requires nearby school districts to give preference in hiring to teachers suspended as a result.

The Petition seeks a declaration that Section 14 and Section 5 of Act 45 are unconstitutional as a violation of the prohibition in Article III, § 32 of the Pennsylvania Constitution against the enactment of a "special law" and requests a permanent injunction against their implementation. The Petition further seeks declaratory and injunctive relief in regard to Section 14 as a violation of Article II, § 1 of the Constitution, which vests the legislative power of the Commonwealth in the General Assembly. Respondents are Dr. Gerald L. Zahorchak, the Secretary of Education, in his official capacity only, and the Department of Education (together, the Department), the Duquesne City School District (Duquesne) and the Duquesne Education Association (DEA).

I

The parties jointly filed a Stipulation of Undisputed Facts on April 8, 2008 (Stipulation). Petitioners and the Department filed applications for summary relief. Duquesne filed a motion for summary judgment, and the DEA filed an application for summary relief and a brief in support, all of which joined and endorsed the Department's application and briefs. The Stipulation recites that each of Petitioners is a school district of the third class with district boundaries within three miles of Duquesne, which is a school district of the third class. On October 11, 2000, then-Secretary Eugene W. Hickok declared Duquesne to be a financially distressed school district under the provisions of Subdivision F of Article VI of the School Code relating to distressed school districts, Sections 691–697, added in part by Section 2 of the Act of December 15, 1959, P.L. 1842, 24 P.S. §§ 6–691 – 6–697. Pursuant to Section 692, 24 P.S. § 6–692, a three-member special board of control (Control Board) was appointed to oversee Duquesne's management and operation, and it has operated for at least five consecutive years.

Under the Education Empowerment Act (EEA), Article XVII–B of the School Code, added by Section 8.1 of the Act of May 10, 2000, P.L. 44, 24 P.S. §§ 17–1701–B – 17–1716–B, the Department creates and maintains an "education empowerment list" prepared annually that lists school districts with a history of low test per-

formance as defined in Section 1702–B, 24 P.S. § 17–1702–B. Secretary Hickok notified Duquesne by letter of July 3, 2000 that it was placed on the list, and Duquesne remains on it. By Control Board resolution adopted June 5, 2007, Duquesne voted to eliminate its high school program beginning with the 2007–2008 school year. Duquesne had not entered into agreements with nearby school districts for student enrollment, payment of tuition or provision of transportation. In a letter of June 13, 2007, the Department approved Duquesne's elimination of the high school program. Two professional and sixteen temporary professional employees, represented by the DEA, were furloughed as a result.

House Bill 842 of the Legislative Session of 2007 as originally proposed in March 2007 contained no language addressing assignment of students whose district ceases operation of its high school. On June 29, 2007, these provisions were introduced as amendments in the Senate. After consideration by a conference committee, the bill was approved on July 16 and July 17 and signed by the Governor on July 20, 2007. Duquesne is the only one of the Commonwealth's 501 school districts that currently meets the criteria specified in Section 1607.1(a) of the School Code. There are 124 Duquesne-resident students attending West Mifflin and 59 attending East Allegheny. Currently three districts are operated by a board of control or equivalent: the Harrisburg School District (second class district), the Chester–Upland School District (second class district) and the School District of Philadelphia (first class district). In the past other districts, including third class districts, have been operated by a special board of control under Section 692. Since the enactment of the EEA, fourteen school districts have been placed on the education empowerment list, including six of the third class. Currently six districts remain on the list; no others are of the third class.

Section 14 of Act 45 relates to distressed school districts and student attendance in other school districts and defines a class in subsection (a) as follows:

(a) If a third class school district in which a public high school is not maintained operates and, for at least five consecutive years, has operated under a special board of control under section 692, has been placed on the education empowerment list under section 1703–B, has, with the approval of the secretary, curtailed its educational program by eliminating its high school and has not assigned its high school pupils to another school district or school districts and provided adequate transportation in a manner pursuant to section 1607 [24 P.S. § 16–1607], the secretary shall have the following authority....

Under clause (1) the Secretary may designate two or more school districts with a border no more than three miles from that of the distressed district to accept its students on a tuition basis, with no more than 165 sent to any one district and the assignment to be made not later than fifteen days after the effective date of the act. Under clause (2) the Secretary may develop a process for the distressed district to use to reassign students to the designated districts, and under clause (3) the Secretary shall establish the tuition rate to be calculated beginning from the tuition charge for each of the receiving districts for the year 2006–2007.

Section 5 of Act 45 amended Section 1113, 24 P.S. § 11–1113, relating to transferred programs and classes, by adding subsection (b.2) to provide:

(1) The following shall apply to professional and temporary professional employes of a distressed school district

in which pupils have been reassigned to another school district pursuant to section 1607.1:

(i) The distressed school district shall create a pool comprised of the professional and temporary professional employes who have received formal notice of suspension from the distressed school district as a result of the curtailment of the high school program.

(ii) Employes in the pool created under subclause (i) shall be offered employment by any school district with a border that is no more than three miles from a border of a distressed school district, as set forth in section 1607.1(a)(1), whenever that school district has a vacancy for a position that an employe in the pool is certified to fill, provided that no employe of the school district in which the vacancy exists, including a suspended or demoted employe, has a right to such vacancy under this act or the collective bargaining agreement of that school district.

(iii) No new employe shall be hired by any school district with a border that is three miles or less from a border of a distressed school district until the position has been offered, in order of seniority, to all properly certified members of the pool created under subclause (i).

Clause (2) provides that employees hired from that pool shall be credited for all sick leave accumulated and for years of service for purposes of salary, leave eligibility and so forth. The parties agree that there are no factual disputes to be resolved in view of the Stipulation and that the matter is ripe for disposition under Pa. R.A.P. 1532(b): "At any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear."

II

■ The Department and the DEA in briefs in support of their applications for summary relief raise a threshold contention that the Court lacks jurisdiction under Section 7540(a) of the Declaratory Judgments Act, 42 Pa.C.S. § 7540(a), which states: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." They state that there are three school districts other than Petitioners within three miles of Duquesne and that have a direct, immediate and substantial interest in the question of the constitutionality of Sections 1113(b.2) and 1607.1 of the School Code. They assert that the Court lacks jurisdiction until those school districts have been properly joined as parties and afforded a meaningful opportunity to be heard.

Petitioners in their brief in opposition to Respondents' applications for summary relief respond that in *City of Philadelphia v. Commonwealth*, 575 Pa. 542, 838 A.2d 566 (2003), the Supreme Court softened the joinder provisions of the Declaratory Judgments Act. The court stated that if Section 7540 were applied in an overly literal manner, it could sweep in hundreds of parties and render litigation unmanageable. It also stated in *City of Philadelphia* that one limiting principle is that "where the interest involved is indirect or incidental, joinder may not be required." *Id.*, 575 Pa. at 568, 838 A.2d at 582. Under the stipulated facts, the Secretary exercised his authority under Section 1607.1(a)(1) to assign students only to West Mifflin and East Allegheny, and South Allegheny hired one former Duquesne teacher. These districts are directly and immediately affected, and the interest of others is indirect or incidental. The Court con-

cludes that further joinder is not required under Section 7540(a) and that the Court therefore has jurisdiction.

Under a heading of "standing," the Department in its brief in support of its application for summary relief challenges the capacity of Petitioners to bring this action. It quotes a statement by Justice Cohen concurring in *Chartiers Valley Joint Schools v. Allegheny County Board of School Directors,* 418 Pa. 520, 211 A.2d 487 (1965), questioning how a school district with the sole duty to carry out the legislature's duty to provide education in the manner prescribed can attack the legislature's directions for discharging that duty and stating that the legislature had not given school districts the duty of making sure that the legislature acts in a constitutional manner.

As to standing, the Department asserts that West Mifflin and East Allegheny have failed to show that they have suffered any injury that they would not have suffered if the existing provisions of Section 1607 of the School Code, 24 P.S. § 1607, relating to attendance in other districts, were applied. It provides:

> Pupils residing in a school district in which no public high school is maintained may attend, during the entire term, at the expense of the school district of which they are residents, the nearest or most conveniently located high school of such class as they may desire to attend, unless the board of school directors of the district of residence shall have assigned the pupils to a high school and adequate transportation is provided thereto.

The receiving school may not refuse to accept such pupils. *See Chester Township School District v. Chester School District,* 418 Pa. 294, 210 A.2d 501 (1965). West Mifflin and East Allegheny are within three miles of Duquesne and likely are the nearest or most conveniently located high schools offering classes that Duquesne students desire to attend. South Allegheny's hiring one teacher does not establish harm where there is no allegation that the teacher was ineffective or that the district was required to reject a more qualified applicant.

Petitioners note this Court's decision in *Harrisburg School District v. Hickok,* 762 A.2d 398 (Pa.Cmwlth.2000) (*Hickok I* ), where the School District of Harrisburg successfully challenged as special legislation the provision of Section 1707–B of the EEA, 24 P.S. § 17–1707–B, known as the "Reed Amendment." At that time the provision authorized immediate control by a board appointed by the mayor in a school district of the second class with a history of low test performance "which is coterminous with the city of the third class which contains the permanent seat of government...." The Court pointed out that "there is nothing in any of the legislation pertaining to school districts or school boards that prohibits either one from bringing an action such as this one, and, in fact, Section 213 of the Public School Code, 24 P.S. § 2–213, provides a school district with the right to sue." *Hickok I,* 762 A.2d at 404 (footnote omitted).

In their brief in opposition, Petitioners cite *DeFazio v. Civil Service Commission of Allegheny County,* 562 Pa. 431, 756 A.2d 1103 (2000), where the Supreme Court explained that one seeking to challenge governmental action must show a direct and substantial interest and a sufficiently close causal connection between the challenged action and the asserted injury to qualify as immediate rather than remote. Section 14 of Act 45 denied two Petitioners any input into the decision-making process for enrolling nonresident students for 2007–2008, and Section 5 interfered with their management prerogatives by imposing a hiring

preference. The latter was similar to the harm found to be sufficient in *DeFazio*, where the legislature imposed certain hiring and promotion procedures only on sheriffs of second class counties. Under the stipulated facts, the Court agrees that Petitioners have standing to sue. The interests of school districts in exerting what influence they can over student admissions and hiring are direct and substantial.

## III

Petitioners' first contention on the merits is that Sections 5 and 14 of Act 45 constitute special legislation, in violation of Article III, § 32 of the Constitution relating to certain local and special laws, which provides in part:

> The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special law:
>
> 1. Regulating the affairs of counties, cities, townships, wards, boroughs or school districts....

In *Pennsylvania Turnpike Commission v. Commonwealth*, 587 Pa. 347, 899 A.2d 1085 (2006), the Supreme Court stated that the underlying purpose of Article III, § 32 has been recognized as being similar to federal principles of equal protection under the Fourteenth Amendment in that both prohibit unlawful classifications. Legislative classifications must be " 'reasonable rather than arbitrary and bear a reasonable relationship to the object of the legislation. In other words, a classification must rest upon some ground of difference, which justifies the classification and has a fair and substantial relationship to the object of the legislation.' " *Id.* at 364, 899 A.2d at 1095 (quoting *Curtis v. Kline*, 542 Pa. 249, 255, 666 A.2d 265, 268 (1995) (citations omitted)). Legislation will survive a challenge

if it does "not create a closed class" and is "based on real distinctions between the local government classified and not on artificial or irrelevant ones used for the purpose of evading constitutional prohibition." *Warren v. Ridge,* 762 A.2d 1126, 1131 (Pa. Cmwlth.2000).

Petitioners argue that Section 1607.1(a) of the School Code creates multiple subclassifications that have no reasonable relationship to a legitimate state purpose and all of which must apply to a district for the section to come into play: (a) it is a third class school district; (b) it does not maintain a public high school; (c) it currently operates under a special board of control pursuant to Section 692; (d) it has operated under a special board of control for at least five consecutive years; (e) it has been placed on the education empowerment list under Section 1703–B; (f) it has curtailed its high school program with approval of the Secretary; (g) it has not assigned its high school pupils to another school district or other districts pursuant to Section 1607; and (h) it has not provided adequate transportation for its pupils pursuant to Section 1607. Duquesne meets all those criteria, and it is the only school district in the Commonwealth that currently does.

Petitioners acknowledge the constitutional authority to classify local governments on the basis of their population, *see DeFazio,* but they point to the criteria of being a district in which a high school is not maintained, which has eliminated a high school with the Secretary's approval and which has not assigned its pupils to another school or provided adequate transportation. They assert that these criteria create a distinction between other school districts in similar circumstances that has no rational justification. They maintain that Section 1607 of the School Code applies to all classes and addresses what happens when a school district closes its

high school: if the board of school directors is unable or unwilling to enter into agreements with nearby districts, then students have the right to select the nearest or most conveniently located school. They make similar arguments regarding the criteria that a district is presently operated by a special board of control under Section 692. No real distinction justifies applying these criteria only to school districts of the third class, and the purpose of the legislature was to promulgate artificial criteria so as to address the particular circumstances in Duquesne's case.

Petitioners further argue that Section 1607.1(a) is unconstitutional *per se* because it creates a class that is substantially closed to future membership. The Supreme Court has held that "a statute may be deemed *per se* unconstitutional if, under the classification, the class consists of one member and is closed or substantially closed to future membership." Pennsylvania Turnpike Commission, 587 Pa. at 369, 899 A.2d at 1098. Section 1714.1–B of the EEA, added by Section 26 of the Act of December 23, 2003, P.L. 304, 24 P.S. § 17–1714.1–B, provides that except for designation by the Secretary as a "Commonwealth partnership school district" as provided in Section 1703–B, no school district shall be placed on the education empowerment list after June 1, 2004. (The EEA expires June 30, 2010 under Section 1716–B, 24 P.S. § 17–1716–B.) One criterion for designation as a partnership school district is that a district has experienced a loss of revenue during the immediately preceding three-year period due to statutory removal of one or more of the sources made available pursuant to Section 652.1, added by Section 3 of the Act of December 19, 1975, P.L. 511, 24 P.S. § 6–652.1, but Section 652.1 applies only to school districts of the first class A. Thus an incredible population increase before June of 2010 would be required for some other district to qualify,

rendering the class created by Section 1607.1(a) "substantially" closed.

Moreover, Petitioners argue, Section 5 of Act 45 is unconstitutional because it relies on the unconstitutional classification of Section 14. There is no independent legitimate purpose served by Section 5, which represents a radical departure from the procedure under the pre-amended version of Section 1113 of the School Code whereby receiving districts that absorbed programs operated by other entities were required to give hiring preference. Under Section 1113(b.2)(1) a school need not receive students in order to be required to give hiring preference.

Finally, Petitioners assert that Section 14 of Act 45 unconstitutionally delegates policymaking to the Secretary in violation of Article II, § 1 of the Constitution, relating to legislative power, which provides: "The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives." The legislature's power to confer authority and discretion upon another body in connection with the execution or administration of laws must be exercised with adequate standards and guidelines, and the basic policy choices must be made by the legislature. *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 583 Pa. 275, 877 A.2d 383 (2005). In this case, the legislature has delegated power to the Secretary to make the policy choice of where students shall be assigned, constrained only by a limitation of 165 students to one district and a choice among districts with a border within three miles. No educationally based standards are prescribed, such as the nature of the facilities at the receiving school or its ability to meet special needs. There are also no guidelines for the "process" for reassign-

ment to be developed by the Secretary pursuant to Section 1706.1(a)(2).

 In its initial brief, the Department stresses that a statute is presumed to be valid and will not be declared unconstitutional unless it "clearly, palpably and plainly violates the Constitution." Pennsylvania Turnpike Commission, 587 Pa. at 363, 899 A.2d at 1094. The challenger bears a heavy burden of persuasion. *Id.* Article III, § 32 and equal protection require that like persons in like circumstances are treated similarly. *Harrisburg School District v. Zogby,* 574 Pa. 121, 828 A.2d 1079 (2003). In deciding if a classification is rational, a court may hypothesize the reasons for the classification, and no record evidence is required. *Martin v. Unemployment Compensation Board of Review,* 502 Pa. 282, 466 A.2d 107 (1983).

In its brief in opposition to Petitioners' application for summary relief, the Department explains that the number and kinds of classifications here are very similar to those the Supreme Court held to be constitutional in *Zogby.* The Supreme Court in *Harrisburg School District v. Hickok,* 563 Pa. 391, 761 A.2d 1132 (2000) (*Hickok*), held that the provision defining the class by the city coterminous with the permanent seat of government was *per se* violative of Article III, § 32 by creating a closed class. In *Zogby,* however, the same section had been amended by the legislature in November 2000 to refer to a school district of the second class, with a history of extraordinarily low test performance, coterminous with a city of the third class that had opted to be governed by a mayor-council form of government which had a population of over 45,000. That description also applied at the time only to Harrisburg, but the Supreme Court upheld the statute concluding that the classification was reasonable and related to a legitimate state interest in ensuring a thorough and

efficient system of public education and that the class was not closed because other districts might join it.

The Department contends that each of the criteria here is reasonable. A school district that does not maintain a high school because its high school has been eliminated poses a severe threat to education. Appointment of a special board of control and its operation for five years rationally relate to a consideration of persistent financial distress, and placement on the education empowerment list is conceded to be a reasonable consideration. A district's not having made adequate arrangements with another school district for placement and transportation of high school students under Section 1607 is a sensible consideration and shows that the legislature was aware of Section 1607 and gave the Secretary authority to assign students if the school district itself made no such arrangements. As for the creation of a small class, the Supreme Court stated in *Zogby:* "[T]here is nothing improper about this method of attacking social problems of statewide dimension, as the Legislature is free, for reasons of necessity or otherwise, to address such issues incrementally." *Id.,* 574 Pa. at 140–141, 828 A.2d at 1090–1091.

In addition, Section 1607.1(a) of the School Code does not create a closed class of one. The criterion that a district "has been placed" on the education empowerment list does not require that a district currently be on the list in contrast to the requirement that a board of control presently "operates" a district. Fourteen districts have been placed on the list, six of which are of the third class, and the legislature could add new members to that class. A classification of one member is not unconstitutional so long as other members might come into that class. This case is unlike *Pennsylvania Turnpike Commission,* where the court struck down legisla-

tion concerning first-level supervisors that limited "public employer" to mean only the commission based on no rational reason. Similarly, in *Hickok* the Supreme Court ruled that the criterion relating to the seat of government made it impossible for another district to join.

The Department's arguments concerning constitutionality of Section 14 of Act 45 apply also to Section 5, intended to provide a regional solution to the displacement of staff furloughed due to the elimination of a high school program. Finally, Section 14 does not unconstitutionally delegate legislative authority. The legislature made basic policy choices, including prescribing limited circumstances where the Secretary can act, requiring at least two other districts to be chosen to receive students and requiring that they be nearby. The legislature did not include the phrase "nearest or most conveniently located," which is in Section 1607, thereby showing intent to give the Secretary discretion.

In a reply brief Petitioners address *Zogby*, and they note the court's statement that the new amendment to Section 1707–B of the EEA, defining a class of only Harrisburg and potentially three other medium-sized urban school districts similarly situated, was to some degree experimental. The act at issue stated that a pilot program was being established to assess effectiveness of the new approach. In their view, nothing about Sections 5 and 14 or their adoption suggests that this new approach was intended as a prototype. Also, the phrase "has been placed" on the education empowerment list in this context is a use of the present perfect tense of the verb, implying action occurring in the past but continuing into the present.

## IV

The Court deems this case to be much closer to *Zogby* than to the case in *Hickok*

*I.* The criteria specified in Section 1607.1(a) of the School Code are similar to those that were held to be rational considerations in *Zogby*. In *Zogby* one criterion was that a school district be a district of the second class coterminous with a city of the third class; a similar criterion here is that a district be one of the third class. In *Zogby* there was a criterion of a history of extraordinarily low test performance; in Section 1607.1(a) there are requirements that a district at some time had been placed on the education empowerment list and that it has a current substantial history of financial distress. The Court may readily agree with the Department that the legislature intended by this provision to avoid creating an incentive for districts to abandon high school programs absent dire circumstances. The criteria in Section 1607.1(a) relate rationally to the objective of identifying school districts that have had educational shortcomings and have ongoing severe financial problems and providing assistance if necessary when such a district eliminates its high school program. The Department is correct that each of the criteria is rational and is rationally related to the objective of Act 45.

The Department is correct as well in noting that Section 1607.1(a) is in harmony with Section 1607. The new provision expressly is triggered only if a district eliminating its high school program has not made arrangements with other districts under Section 1607. In addition, as the DEA points out in its response to Petitioners' application for summary relief filed May 12, 2008, the provisions of Section 1113(b.2) are similar to existing preferential hiring provisions in Section 1113, which provide preferential hiring for teachers whose programs are moved to other jurisdictions, not limited to re-employment in the same program or to following the same students. Section 1113(b.1), 24 P.S. § 11–1113(b.1), provides that no new teacher shall be hired by a

school entity assuming responsibility for transferred students while there is a properly certified teacher suspended at the receiving entity or, if none, a properly certified teacher from the pool of teachers suspended as a result of the transfer who is willing to accept the employment. Section 1113(b.2) is rationally related to a legitimate state interest of ensuring that qualified teachers are drawn to and remain in public school service.

The Court agrees with the Department's interpretation that "has been placed" on the education empowerment list does not require continuing presence on the list, which would result in a closed class of one, because no other district could meet the requirement of five consecutive years' operation by a special board of control before the EEA expires. Under the Department's interpretation, there are other third class school districts that have been on the list and that conceivably could fulfill the other conditions and become members of the class, even though the EEA itself expires in June 2010.

As the Department emphasizes, the courts "are obliged to construe legislative enactments, where possible, in compliance with the federal and state constitutions...." *Harrington v. Department of Transportation, Bureau of Driver Licensing*, 563 Pa. 565, 577, 763 A.2d 386, 393 (2000). Section 1922(3) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(3), states the presumption that the legislature does not intend to violate the Pennsylvania Constitution. This Court has held that where a statute is reasonably susceptible of two constructions, by one of which it would be unconstitutional, the Court must adopt the interpretation that will uphold the statute. *Ramsey v. Zoning Hearing Board of Dormont*, 77 Pa. Cmwlth. 456, 466 A.2d 267 (1983).

▮ Finally, the Court does not perceive any unconstitutional delegation of legislative authority in violation of Article II, § 1. The basic policy choices were made by the legislature concerning geographic proximity and dispersal of students among two or more other districts and limitation on the number of students assigned to any one district. The Secretary's orderly choices, guided by expertise, replace possibly chaotic or uninformed choices by students. In view of the strong presumption in favor of constitutionality, *Pennsylvania Turnpike Commission*, and the similarity of this case to *Zogby*, the Court holds that Sections 5 and 14 of Act 45 are not unconstitutional, and it therefore denies the application for summary relief of Petitioners and grants those of the Department, Duquesne and the DEA.

### *ORDER*

AND NOW, this 4th day of September, 2008, the motions and applications for summary relief filed by Dr. Gerald L. Zahorchak, the Commonwealth of Pennsylvania, Department of Education, Duquesne City School District and Duquesne Education Association are granted. The application for summary relief filed by Petitioners West Mifflin Area School District, East Allegheny School District and South Allegheny School District is denied and their petition for review is dismissed with prejudice.

DISSENTING OPINION BY Judge COHN JUBELIRER.

While I do not question the substance of Sections 1113(b.2) and 1607.1 of the Public School Code of 1949[1] (Code), I must respectfully dissent because I agree with Petitioners that, as drafted, these statutory provisions constitute special legislation in violation of Article III, Section 32 of the Pennsylvania Constitution.

---

**1.** Act of March 10, 1949, P.L. 30, added by Act of July 20, 2007, P.L. 278, No. 45, §§ 5,

14, 24 P.S. §§ 11–1113(b.2), 16–1607.1.

Article III, Section 32 of the Pennsylvania Constitution provides, in relevant part, that "[t]he General Assembly shall pass no local or special law ... [r]egulating the affairs of counties, cities, townships, wards, boroughs or school districts." In applying Article III, Section 32 of the Pennsylvania Constitution, our Supreme Court has held that "a statute may be deemed *per se* unconstitutional if, under the classification, the class consists of one member and is closed or substantially closed to future membership." *Pennsylvania Turnpike Commission v. Commonwealth*, 587 Pa. 347, 369, 899 A.2d 1085, 1098 (2006).

The majority, here, concludes that Section 1607.1 of the Code does not create a closed class. In so concluding, the majority agrees with the Department's interpretation that the language, "has been placed on the educational empowerment list," which is found in Section 1607.1(a) of the Code, does not require continuing presence on the list but, rather, merely requires presence on the list at some point in the past. *West Mifflin Area School District et al. v. Zahorchak et al.*, 956 A.2d 1040, 1050, (Pa.Cmwlth., No. 371 M.D. 2007). However, I disagree with this interpretation.

Section 1607.1 of the Code is titled "Distressed school districts and student attendance in other districts." 24 P.S. § 16–1607.1. The requirements set forth in subsection (a) of Section 1607.1 define which school districts qualify as "distressed" for the purposes of that Section. If the requirement that a school district "has been placed on the educational empowerment list" is interpreted, as was done so here by the majority, to require only presence on the educational empower-

ment list at some point in the past, then the requirement becomes artificial. That is, if a school district was on the educational empowerment list at some point in the past, but is no longer on the list because it has improved its situation, the school district's past inclusion on the list has absolutely no bearing on whether the school district is currently "distressed." The only way that a school district's presence on the educational empowerment list has any bearing on whether the school district is currently "distressed" is if the school district is on the list at the time the "distressed" determination is made. Thus, in order to give effect to the "has been on the educational empowerment list" language, I believe that such language must be interpreted to mean presence on the list contemporaneous with the time the determination is made that the school district is "distressed" for the purposes of Section 1607.1. *See* 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions.")

Under this interpretation, Duquesne is the only school district that could ever satisfy the requirements of Section 1607.1(a). That is, Duquesne is the only school district of the third class that is currently on the educational empowerment list and is the only school district of the third class that has been under the supervision of a board of control for five consecutive years. Moreover, the Education Empowerment Act,[2] which provides for placement on the educational empowerment list, expires on June 30, 2010,[3] and thus, there is no possibility that a school district of the third class, other than Duquesne, will ever simultaneously meet the requirements of presence on the educational empowerment list and supervision

---

**2.** Act of May 10, 2000, P.L. No. 16, *as amended*, 24 P.S. §§ 17–1701–B—17–1716–B.

**3.** Section 1716–B of the Education Empowerment Act, 24 P.S. § 17–1716–B.

by a board of control for five consecutive years. Therefore, because Section 1607.1 creates a class of one that, for all intents and purposes, is not open to future membership, I believe that Section 1607.1 is *per se* unconstitutional.[4],[5] *See Pennsylvania Turnpike Commission*, 587 Pa. at 369, 899 A.2d at 1098.

It is clear to me that the statutory provisions involved in this case were intended only to address the specific situation faced by Duquesne, while leaving untouched the existing procedures applicable to all other school districts in the Commonwealth.[6] One of the real dangers involved in such a situation is that members of the General Assembly can single out one school district for particularized treatment, while their own constituents are in no way affected. I believe that it is precisely this type of special legislation that Article III, Section 32 of the Pennsylvania Constitution prohibits. Accordingly, I respectfully dissent.

Judge PELLEGRINI joins in this dissenting opinion.

---

4. Because the applicability of Section 1113(b.2) of the Code is conditioned upon a school district first qualifying as "distressed" under Section 1607.1, I believe that Section 1113(b.2) is also unconstitutional.

5. I do not question whether Section 1607.1, which helps to ensure that students have a place to attend high school and streamlines the process for when the high school in their district of residence closes, is good policy. I also do not question whether Section 1113(b.2), which assists teachers from high schools that are closed in obtaining employment, is good policy. However, I do not believe that it is constitutional to apply these policies to only one school district.

6. For all other school districts in which no public high school is maintained, Section 1607 of the Code, 24 P.S. § 16–1607, applies. Section 1607 provides, in relevant part, as follows:

> Pupils residing in a school district in which no public high school is maintained *may attend*, during the entire term, at the expense of the school district of which they are residents, *the nearest or most conveniently located high school of such class as they may desire to attend*, unless the board of school directors of the district of residence shall have assigned the pupils to a high school and adequate transportation is provided thereto.

24 P.S. § 16–1607 (emphasis added). However, under Section 1607.1, which, as discussed in this dissent, applies only to Duquesne, the Secretary of the Department makes the decision without regard to the wishes of the pupils. 24 P.S. § 16–1607.1.